John F. McCloskey and City of Philadelphia, Appellants *v.* Independence Cablevision Corp. and Roscoe Murphy, Jr., Appellees.

Argued May 11, 1983, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and BARBIERI, sitting as a panel of three.

436

*Jill A. Douthett,* Divisional Deputy City Solicitor, with her *Mark A. Aronchick,* Acting City Solicitor, and *John J. Dibernardi,* Assistant City Solicitor, for appellants.

*Oscar N. Gaskins, Oscar N. Gaskins & Associates, P.C.,* with him *Bruce W. Ficken* and *Joan A. Yue,* Pepper, Hamilton & Scheetz, for appellants.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., May 25, 1983:

This is an appeal by John F. McCloskey (Commissioner)[1] and the City of Philadelphia (City), and a cross-appeal by Independence Cablevision Corporation (Independence) from a Philadelphia County Common Pleas Court order. We affirm in part and reverse in part.

FACTS AND PROCEDURE

In June, 1982, City Council adopted "An Ordinance Providing for the establishment within the city of Philadelphia of Cable Communication System (CATV) service" (Ordinance). The Ordinance directed the Commissioner to solicit and initially review, subject to the competitive bidding provisions of the Philadelphia Home Rule Charter,[2] proposals for the franchising of

---

[1] McCloskey, as the Commissioner of the Department of Public Property, was designated by City ordinance to solicit and review proposals for the establishment of a cable communication system.

[2] Section 8-201 of the Home Rule Charter, 351 Pa. Code §8.8-201.

cable television in each of four designated franchise areas. The Commissioner issued a Request for Proposal (RFP) which established December 22, 1982, as the bid submission deadline. Independence, a 100% minority-owned and managed television cable company, submitted separate proposals for Areas 2 and 3, but had included in the Area 3 proposal a *blank* copy of the RFP's "Form G: Financial Pro Forma" (Form G).[3]

After preliminary review, CTIC Associates[4] advised the Commissioner that, due to the absence of a completed Form G, Independence's Area 3 proposal was non-responsive to both the Ordinance and the RFP, and consequently any meaningful evaluation thereof was impossible. Although not officially informed of any deficiency in its bid,[5] Independence hand-delivered the completed Form G to the Commissioner on March 2, 1983. On March 4, 1983, the Commissioner notified Independence by letter:

(1) that its Area 3 proposal was submitted without a completed Form G;[6]

(2) that Form G was a material and important element of the proposal;

(3) that the late submission of a completed Form G was an attempt to "substantively

---

[3] Form G required the applicant to project capital expenditures, system growth, construction costs, annual expenses and revenues over the life of the franchise. The information supplied on this form was used by the City to evaluate the technical and financial feasibility of the applicants' proposals.

[4] CTIC Associates, the City Administration's technical consultant, was requested by the City to make a preliminary assessment of the proposals' responsiveness to the Ordinance and RFP.

[5] It appears from the record that Independence learned for the first time of a possible deficiency in its bid in late February through the news media.

[6] The record indicates that this is the first *official* confirmation that Independence had submitted its Area 3 proposal with a blank Form G.

amend'' the proposal, a procedure prohibited by the RFP; and

(4) that the failure to include a completed Form G constituted a ''material and non-waivable defect'' mandating the proposal's disqualification from further consideration.

On March 22, 1983, Independence filed suit in common pleas court to enjoin the City from holding public hearings on the other Area 3 proposals[7] and from proceeding further with an Area 3 franchise award until the merits of Independence's disqualification could be reviewed judicially. On April 6, 1983, Judge STANLEY M. GREENBERG concluded that Form G's submission was not mandated by the RFP and issued a preliminary injunction requiring the City to reinstate Independence's proposal for further evaluation. The trial court, however, did *not* permit Independence to submit a completed Form G. The City appeals that part of the order requiring it to process further the proposal and, on April 8, 1983, Judge GREENBERG vacated the automatic supersedeas provided under Pa. R.A.P. 1736(b) to a political subdivision on appeal. On April 22, 1983, this Court granted the City's petition to suspend the injunction pending appeal. Independence appeals that portion of the trial court's order which did not permit the late submission of a completed Form G. The appeals were consolidated for argument and disposition.

## ISSUES

There are two issues for resolution:

(1) whether the absence of a completed Form G from Independence's Area 3 proposal requires the outright rejection of that proposal; and

---

[7] The record indicates that at least three other bidders (Comcast Cable Communications, Rollins Cablevision and Cox Cablevision) submitted proposals for Area 3.

(2) whether the late submission of a completed Form G constitutes a "substantive amendment" under the RFP and thus cannot be accepted legally by the City.

## Discussion

We preface our discussion with an acknowledged appreciation for the complexity and uniqueness of this situation. Due to the expenditure of public funds in the execution of a government contract, the courts traditionally have respected and preserved the sanctity of the competitive bidding process. Laws requiring the competitive bidding of public contracts serve "the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts. . . ." *Conduit and Foundation Corp. v. City of Philadelphia*, 41 Pa. Commonwealth Ct. 641, 646, 401 A.2d 376, 379 (1979). On the other hand, if the public wealth is to be expended prudently and honestly, and if the integrity of the bidding process is to be maintained, the bidders must be treated fairly and cannot be excluded unduly from participation. Although guided by well-entrenched legal and public-policy tenets, a court must avoid the *mechanical* application of these principles without close reference to the underlying facts and applicable legislation, and without balancing the harm of excluding the bidder against the effects of permitting his continued participation. With this in mind, we now examine the issues.

## I

The City contends that the inclusion of a completed Form G in a proposal is required by both the Ordinance and the RFP and, thus, the absence of the completed form in the original submission mandates the outright rejection of Independence's bid.

We appreciate the significance of the information contained on Form G.[8] An evaluation of a bidder's financial capability, as demonstrated by Form G, is indeed a vital component in the overall review process. Without the requested data, the City would not be able to determine a proposal's financial viability in relation to its technical design and proposed provision of service.

We disagree, however, that Independence's failure to include the completed form in its original submission mandates the peremptory rejection of its bid. Neither the Ordinance nor the RFP affirmatively provides that a bid will be rejected for failure to include a completed Form G in its original submission. The RFP advises prospective bidders that "[e]vasive, imprecise or incomplete responses *can only serve to disadvantage the applicant,*"[9] but there is no provision requiring the summary rejection of a deficient proposal.

Thus, we conclude that, although the information contained on Form G is necessary to enable the City to thoroughly and completely review Independence's proposal, the absence of the completed form does *not* require that the proposal be rejected at this time.[10]

---

[8] At the hearing before Judge GREENBERG, the City presented testimony that the information contained on Form G was necessary to allow the City to determine "whether there is adequate staffing [and] adequate monies being budgeted [by the bidder] to maintain the services as proposed. . . . [T]he ability to deliver the system, the ability to deliver on services [*i.e.*, matters which can only be analyzed based on the Form G information] are fundamentally important to the question of whether the proposal is viable."

[9] (Emphasis added.)

[10] Clearly, we are not directing the City to *accept* Independence's Area 3 proposal. By today's decision, we are merely requiring the City to rescind its peremptory rejection of Independence's proposal and to accept the proposal for further processing.

## *II*

The common pleas court concluded that the late submission of Form G would constitute a "substantive amendment," the acceptance of which is prohibited by the RFP.[11] Independence, however, argues that it had attempted merely to correct an "inadvertent error" and that such post-deadline correction is permitted under the RFP "if the applicant submits with its correction sufficient information to prove that the error was inadvertent."

In the area of public contracts, bid modifications made subsequent to the designated submission date have been examined carefully by the courts since post-submission modifications may confer a competitive advantage upon one bidder to the detriment of others. *See Conduit and Foundation Corp.* The court then must analyze completely the underlying circumstances to ensure that the bidders have competed on a fair and open basis, while contemporaneously preserving an individual's right to participate freely in the bidding of a public contract.

We disagree that the late submission of Form G constitutes a prohibited "substantive amendment." Independence was not seeking to *amend* its bid. Rather, it was attempting simply to *correct* its bid by providing information, previously lacking, that was critical to a fair analysis of its proposal. Moreover, based on the record before us, we are convinced that the omission was inadvertent.

Notwithstanding both the inadvertence of the omission and the mere correcting nature of a late submission, we realize that the *opportunity* for competitive

---

[11] The RFP provides that "Substantive amendments will not be considered except to acknowledge involuntary changes such as a change in ownership due to death."

advantage in Independence's favor may exist.[12] If Independence is now permitted to submit a completed Form G, the benefits of any potential competitive advantage must be purged. Thus, in addition to allowing Independence to submit a completed Form G for Area 3 within ten (10) working days of the filing of this decision, we order the City *to notify immediately all other applicants for the Area 3 franchise that they have the opportunity to submit a revised Form G within the same time period.*[13] This will maintain the integrity of open and fair competitive bidding and also will permit the City, without substantial delay, to continue processing the proposals so that the primary legislative intent underlying the Ordinance will be realized, to wit, that the citizens of Philadelphia will be provided with a state-of-the-art Cable Communication System service.[14]

[12] Independence submitted its original proposal on December 22, 1982, but was not notified either officially or unofficially that its application was deficient until late February, 1983, at which time Independence attempted promptly to correct the application. All proposals, however, had already been opened and made available for public inspection. Independence, therefore, had the opportunity to inspect the other proposals before completing Form G for late submission. Although there is nothing in the record to indicate that Independence availed itself of this opportunity, we recognize that the *opportunity* for competive advantage *did* exist.

[13] We note that judicial intervention in the process is proper when competitive bidding is used and the benefits of such bidding are questioned. *Cf. American Totalisator Co. v. Seligman,* 489 Pa. 568, 577, 414 A.2d 1037, 1041 (1980).

[14] The City cites *Conduit and Foundation Corp., supra,* and *American Totalisator Corp. v. Seligman,* 34 Pa. Commonwealth Ct. 391, 384 A.2d 242 (1977), *aff'd,* 489 Pa. 568, 414 A.2d 1037 (1980), for the proposition that modifications occurring subsequent to the original bid submission infect the competitive bidding process, thus invalidating government contracts awarded on the basis of these modifications. While we agree in principle with this proposition, we note that these cases are factually distinguishable from the instant case.

## Conclusion

We cannot emphasize enough the unique character of this case,[15] and we hold that under no circumstances (except a *precise* factual posture) is this precedential. In an area of law that demands meticulous attention to

In *Conduit*, the proposal in question constituted such an aberation from the bid specifications as to violate the statutory competitive bidding requirements. *Id.* at 645, 401 A.2d at 379. Additionally, the bid documents in *Conduit* specifically prohibited *any* proposal modification subsequent to the bid opening. In the instant case, however, Independence's bid did not constitute such an aberration of the bid specifications; furthermore, the RFP here allows for the post-submission correction of inadvertent errors.

In *American Totalisator*, the bid documents required that the "lowest responsible bidder" be awarded the contract; thus, the Court would not permit an applicant to lower its bid after examining a competitor's bid. In the instant case, however, the RFP does *not* provide that the lowest responsible bidder will be selected. Rather, because of the advanced state-of-the-art of cable television, the Ordinance and the RFP stress an examination to reveal "the most qualified applicants." Although the amount of the bid is to be considered in reviewing these proposals, it is by no means the only criterion in this particular selection process.

[15] We are influenced by the following factors:

(1) The object of this particular bidding process is to secure *the most qualified applicant,* which may not necessarily be the lowest bidder. *See* n. 14, *supra.*

(2) The Commissioner is required by the Ordinance to "give favorable consideration" to certain enumerated factors, one of which is "the level and quality of commitment to Philadelphia-based minority . . . involvement with the system [including] *especially* ownership *and/*or investment opportunities as well as managerial policy-making and operational opportunities, training, employment and business opportunities." (Emphasis in original.) Independence is a 100% minority-owned and managed cable television company.

(3) Based on the RFP, the failure to include a completed Form G in Independence's original submission was not such a deviation from the bidding specifications as to mandate its outright exclusion from the evaluation process.

particular circumstances, the courts must weigh carefully the preservation of the competitive bidding process against the right of an individual to bid freely on public contracts. Only when these two components are balanced properly will the public interest be best served. Having undertaken this painstaking process, we conclude that the public interest will be best served by permitting Independence to submit its completed Form G in accordance with this Opinion, and by providing the opportunity to the other Area 3 applicants to resubmit their respective Form G documentation.

Affirmed in part and reversed in part.[16]

## ORDER

That part of the Philadelphia County Common Pleas Court order, No. 4019 March Term, 1983, dated April 6, 1983, requiring John F. McCloskey to rescind the rejection of Independence Cablevision Corporation's (Cablevision) Area 3 proposal and to accept said proposal for processing is hereby affirmed. However, that part of the Common Pleas Court order pro-

---

(4) All bidders were required to provide a "nonrefundable filing fee in the amount of $10,000" to offset expenses incurred by the City in granting the franchises. We conclude that a great injustice would result if Independence's bid were rejected on the basis of a nonsubstantive omission which could readily be corrected without prejudice to the other applicants.

(5) By giving the other Area 3 applicants the opportunity to resubmit their respective Form G documentation, any potential for competitive advantage in Independence's favor has been vitiated.

[16] We are not substituting our discretion for administrative discretion in the *award* of the Area 3 franchise. This is clearly proscribed. *See American Totalisator*, 489 Pa. at 576, 414 A.2d at 1041. We are merely giving Independence the opportunity to participate in fair and open competitive bidding. The ultimate decision regarding an applicant's overall qualification rests, of course, with the City.

hibiting Cablevision from submitting a completed "Form G: Financial Pro Forma" is hereby reversed. Cablevision is hereby permitted to submit a completed Form G within ten (10) working days of the filing of this Order. Additionally, John F. McCloskey is hereby ordered to notify *immediately* all other bidders who have heretofore submitted proposals for the Area 3 franchise that they have the opportunity to revise and resubmit their respective Forms G within ten (10) working days of the filing of this Order.