**GLASGOW, INC., Petitioner**

v.

**PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 4, 2004.

Decided June 4, 2004.

Otis W. Erisman, Philadelphia, for petitioner.

Christopher F. Wilson, Harrisburg, for respondent.

Mason Avrigian, Jr., Blue Bell, for amicus curiae, James D. Morrissey, Inc.

BEFORE: COLINS, President Judge and McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge and COHN, Judge.

OPINION BY Judge PELLEGRINI.

Glasgow, Inc. (Glasgow) petitions this Court to review a final determination of the Secretary of Transportation denying Glasgow's bid protest, challenging the rejection by the Department of Transportation (Department) of Glasgow's apparent low bid to perform a road reconstruction project in Montgomery County (the Project).

Glasgow submitted a bid to the Department to perform the Project in the amount of $10,335,645.80. The bid was submitted in accordance with the Department's bid requirements via the Department's new internet bidding system, known as the Electronics Contract Management System (ECMS). The Department's bid specification for the Project included a special provision called "Designated Special Provision 7" (DSP7) entitled "Disadvantaged Business Enterprise Requirements." It provides:

> **Responsive.** When the goal established by the Department is met or exceeded, the apparent low bidder is required to electronically submit evidence of such solicitation and commitments, by accessing the Department's ECMS web page by selecting and submitting DBE Participation for Federal Projects by 3:00 o'clock p.m. prevailing local time within seven (7) calendar days after the bid opening. When the seventh calendar day after the bid opening falls on a day the PENNDOT offices are closed, submit the DBE Participation for Federal

Projects by 3:00 o'clock p.m. prevailing local time on the next business day.

(Reproduced Record at 5b.)

The bid specifications also provided what would occur if the apparent low bidder did not timely submit the Disadvantaged Business Enterprise (DBE) information. In Paragraph IV of DSP7, the Department notified and informed all bidders of the following:

> *When the above required documentation is not provided by the apparent low bidder within the time specified, the bid will be rejected* and the apparent next lowest bid will be notified by telephone to electronically submit evidence of such solicitations and commitments, by accessing the Department's ECMS web page by selecting DBE Participation for Federal Projects by 3:00 o'clock p.m. prevailing local time within seven (7) calendar days notification.

(Reproduced Record at 5b.) (Emphasis added.)

On July 17, 2003, Glasgow received an e-mail from the Department advising it that it was the apparent low bidder for the Project. The e-mail further advised Glasgow to submit its DBE participation information for the Project by 3:00 p.m. July 24, 2003. This information was to be submitted via the ECMS and placed on the Department's website.

On July 23, 2003, Glasgow placed all relevant DBE information on the Department's website; the information indicated that the DBE participation in Glasgow's bid was 7.1%, exceeding the 7% goal required by the Department for the Project, and the DBE subcontractors named by Glasgow on the website electronically "ac-

knowledged" receipt of their selection via the Department's website. Glasgow's estimator, however, neglected to take the next step, which was to press the "submit" button. Taking the failure to hit the "submit" button as a failure to submit the information, the Department rejected Glasgow's bid because the information had not been "submitted" by the required time. It awarded the contract to the next lowest bidder, whose bid was $432,626 higher than Glasgow's.[1]

■ Glasgow filed a bid protest with the Department. Without holding a hearing, the Secretary of Transportation (Secretary) denied the protest by letter dated August 18, 2003. The Secretary accepted Glasgow's contention that its estimator simply forgot to press the submit button. The Secretary, however, noted that the bidding instructions expressly stated that when the required DBE documentation is not provided by the apparent low bidder within the time specified, the bid will be rejected.

■ The Secretary stated two reasons for the rejection of Glasgow's contention that the submission requirement should be waived because the DBE information was available on the Department's website. First, he stated that such information was "not readably [sic] accessible." (Secretary's Letter Decision at 2.) Second, he stated that until a contractor submits the required information, it "has a great deal of flexibility regarding the use of particular subcontractors." *Id.* The Secretary also noted the Department's longstanding practice, prior to the implementation of the ECMS, of rejecting bids when a bidder innocently forgets to fax or attach "Attachment A" setting forth the bidder's informa-

---

1. The bidding instructions pertaining to the submission of DBE information provide that the low bidder's failure to "submit" such information by the date and time provided *will* result in the award of the contract to the next lowest bidder, provided that the next lowest bidder timely submits its DBE information.

tion regarding DBE participation. The Secretary determined that a bidder's failure to hit the submit button is no different than a bidder's failure, under prior procedure, to timely mail or fax "Attachment A." This appeal followed.[2]

Glasgow contends that the Department abused its discretion by failing to waive what Glasgow denominates as insubstantial and immaterial irregularity in the bidding process; i.e., by treating Glasgow's bid as not "submitted" when it failed to click on the submit button to submit the required information.[3]

While a governmental body has the discretion to waive non-material bid defects where the non-compliance (1) does not deprive the agency of the assurance that the contract will be entered into and performed and (2) does not confer a competitive advantage on the bidder, *Gaeta v. Ridley School District,* 567 Pa. 500, 788 A.2d 363 (2002), the failure to submit the information in this case is not a waivable defect. Where specifications set forth in a bidding document are mandatory, they must be strictly followed for the bid to be valid, and a violation of those mandatory bidding instructions constitutes a legally disqualifying error for which a public agent may reject a bid. *Kimmel v. Lower Paxton Township,* 159 Pa.Cmwlth. 475, 633 A.2d 1271, 1275 (1993). While a bidding entity may waive a bid defect, it may not do so if it involves the waiver of a mandatory requirement that the bid instructions treat as non-waivable. *Karp v. Redevelopment Authority of Philadelphia,* 129 Pa.Cmwlth. 619, 566 A.2d 649 (1989), *petition for allowance of appeal denied,* 527 Pa. 619, 590 A.2d 760 (1990). While the Department could have provided otherwise, it removed any discretion it had to waive the time to submit the information when it provided in the bid instructions that the bid would be rejected if the information was not provided within the time specified.

Even if the failure to submit the information was a waivable defect, the Department did not abuse its discretion in rejecting Glasgow's bid, even though the Department had received all the DBE information on its website. The Department found that until Glasgow hit the submit button no information had been provided; there were just "screens" that were filled, and Glasgow did not have a commitment and had no responsibility to commit to the DBE subcontractors it listed until it actually clicked on the submit button. In other words, Glasgow would be able to delete their inclusion absent the formal step of hitting the submit button. We find that where governmental entities are at the beginning stages of implementing electronic bidding, determining the requisites for a proper bid

---

2. This Court's scope of review of an agency decision is limited to determining whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are supported by substantial evidence. *Barran v. State Board of Medicine,* 670 A.2d 765 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 544 Pa. 685, 679 A.2d 230 (1996). Further, judicial review of discretionary acts of governmental bodies requires an "affordance of deference" towards such acts. *Gaeta v. Ridley School District,* 567 Pa. 500, 507, 788 A.2d 363, 366 (2002).

3. Glasgow also cites *Marx v. Lake Lehman School District,* 817 A.2d 1242 (Pa.Cmwlth. 2003), wherein we determined that a failure to timely deliver a performance bond after the bidding was complete did not violate the spirit of the competitive bidding process and, thus, did not require the rejection of the contract award. Glasgow argues that in the present case, as in *Marx,* the competitive process had already run its course, and its failure to hit a computer button after the fact is simply an error without any substantial meaning.

should be left to the discretion of the agency, especially at this early stage.[4]

■ Moreover, if we were to adopt Glasgow's position that they are not required to click the submit button, that would make clicking the button superfluous when it is not.[5] All of us, when using a debit or credit card, are used to "swiping" the card, then receiving a message of "is this amount ok?" and then having to push a button indicating assent. Until we push the button, even though the bank has all the information, it is not ok for the bank to charge the account. Similarly, when one goes on the internet to buy a book or book a trip, one submits all the information to the vendor's site, and after it has the information and has recapsulized the transaction, the site requires one to click on a submit button. Only when that occurs is the party bound to the terms of the transaction and only then is your credit card charged. What occurred here is no different than what occurs in normal, every day commercial transactions; until the submit button was clicked, Glasgow, as the

---

4. We note that Section 502 of the Electronic Transactions Act, Act of December 16, 1999, P.L. 971, *as amended*, 73 P.S. § 2260.502, gives governmental agencies the power to determine how they are going to receive electronic submissions. Section 502 provides that:

> Each governmental agency in this Commonwealth shall determine whether and the extent to which it will send and accept electronic records and electronic signatures to and from other persons and otherwise create, generate, communicate, store, process, use and rely upon electronic records and electronic signatures.
> * * *
> (b) Specifics.—To the extent that a governmental agency uses electronic records and electronic signatures under subsection (a), the governmental agency, giving due consideration to security, may specify all of the following:
>> (1) The manner and format in which the electronic records must be created, generated, sent, communicated, received and stored and the systems established for those purposes.
>> (2) If electronic records must be signed by electronic means, the type of electronic signature required, the manner and format in which the electronic signature must be affixed to the electronic record and the identity of or criteria that must be met by any third party used by a person filing a document to facilitate the process.
>> (3) Control processes and procedures as appropriate to ensure adequate preservation, disposition, integrity, security, confidentiality and auditability of electronic records.

>> (4) Any other required attributes for electronic records which are specified for corresponding nonelectronic records or reasonably necessary under the circumstances.
> (c) Not mandatory.—This chapter does not require a governmental agency to use or permit the use of electronic records or electronic signatures.

5. Glasgow also argues that the Department erred by making a final determination without first holding a hearing. Glasgow contends that at a hearing, it could introduce computer experts who would testify as to accessibility of the DBE information to the Department on its website as of the Department's deadline. This alleged testimony could refute the Department's conclusion in its determination letter that such information was not readily (or "readably") accessible. The Department also argues that it did not err by making its determination without a prior hearing. The Department contends that there are no facts in dispute, as both it and Glasgow agree that Glasgow lost the bid because of the latter's failure, albeit inadvertently, to click on the submit button on the Department's website. Further, the Department cites Section 1711.1 of the Commonwealth Procurement Code, 62 Pa.C.S. § 1711.1, as providing that it may dispose of a bid protest without an evidentiary hearing. Section 1711.1(e) provides that the head of a purchasing agency may hold a hearing on a bid protest in his or her sole discretion. We agree with the Department that a hearing was not necessary because there is no dispute as to the controlling facts, and a hearing is not required to be held when there are no facts in dispute.

Department found, was not bound by any of its representations.

Accordingly, because the Department did not abuse its discretion in rejecting Glasgow's bid, its decision is affirmed.

Judge SMITH–RIBNER and Judge FRIEDMAN dissent.

## ORDER

AND NOW, this *4th* day of *June*, 2004, the order of the Pennsylvania Department of Transportation in the above-captioned matter is hereby affirmed.

## DISSENTING OPINION BY President Judge COLINS.

I respectfully dissent to the majority's thoughtful analysis of this novel issue. I believe that the Department's decision constitutes a hyper-technical interpretation of its bidding requirements, exulting form over substance, and resulting in an unnecessary additional burden on taxpayers in the amount of $432,626.

At the outset, I question whether Glasgow's submission was deficient. I disagree with the majority's conclusion that Glasgow failed to "submit" the necessary DBE information on time, and I question the majority's acceptance of the Department's factual and legal characterizations of Glasgow's submission. Op. p. 1017.

The Department recognized Glasgow as the apparent lowest qualified bidder following the completion and submission of bids by Glasgow and its competitors. All that remained was for Glasgow to submit information concerning its proposed DBE subcontractors by the deadline in the manner required by the bidding instructions. Glasgow placed the information on the Department's website. Thus, the Department had the DBE information available for viewing by the submission dates and time. This information exceeded the Department's requirements. The DBE subcontractors acknowledged their selection via the website. The only missing element

was the scrolling down of the web page and the clicking on the submit button found there. Both parties acknowledge that Glasgow's failure to do so was simply an oversight.

Further, it is well established that the submission of a bid constitutes an "offer" and becomes a binding contract when the bid is accepted by the agency. *Muncy Area School District v. Gardner*, 91 Pa. Cmwlth. 406, 497 A.2d 683 (1985). Glasgow, therefore, would have no grounds to assert that its DBE subcontractor information was not binding upon it had the Department gone forward with the contract. Moreover, the Department has the right to monitor, with appropriate enforcement mechanisms, the construction project to ensure that its DBE requirements are being met. Therefore, the "practical" implications of Glasgow failing to hit the "submit" button, as described by the Department, are a non-issue.

Even if Glasgow's submission was defective, I would reverse the Secretary's decision. Our Supreme Court has held that a governmental body may waive bid defects where the noncompliance (1) does not deprive the agency of the assurance that the contract will be entered into and performed and (2) does not confer a competitive advantage on the bidder. *Gaeta v. Ridley School District*, 567 Pa. 500, 508–9, 788 A.2d 363, 368 (2002). As discussed above, the Department had definite assurance of Glasgow's performance. Further, the competitive bidding process had already run its course by the time Glasgow was requested to set forth its DBE subcontractor information, because the Department had named Glasgow lowest responsible bidder. Thus, the failure to hit the submit button in no way conferred upon Glasgow a competitive advantage necessitating the rejection of its bid.

Despite the deference courts generally afford governmental agencies in reviewing discretionary actions, and the rule that specifications in a bidding document are generally mandatory and must be strictly followed, *see Shaeffer v. City of Lancaster,* 754 A.2d 719 (Pa.Cmwlth.2000), I would temper our review of the issues by recognizing that, when circumstances warrant, we may disturb an agency's discretionary award of a public contract. In *McCloskey v. Independence Cablevision Corp.,* 74 Pa. Cmwlth. 435, 460 A.2d 1205, 1207 (1983) (citation omitted), we stated:

> Laws requiring the competitive bidding of public contracts serve "the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption in awarding of municipal contracts...." On the other hand, if the public wealth is to be expended prudently and honestly, and if the integrity of the bidding process is to be maintained, the bidders must be treated fairly and cannot be excluded unduly from participation. Although guided by well-entrenched legal and public-policy tenets, a court must avoid the *mechanical* application of these principles without close reference to the underlying facts and applicable legislation, and without balancing the harm of excluding the bidder against the effects of permitting his continued participation.

Further, in *Gaeta,* our Supreme Court, quoting *American Totalisator Co. v. Seligman,* 489 Pa. 568, 576, 414 A.2d 1037, 1041 (1980), has noted that "When competitive bidding is used and the procedures followed emasculate the benefits of such bidding, we believe judicial intervention is proper." 567 Pa. at 507, 788 A.2d at 367. In such cases, we should strike a balance between the harm that arises when an agency excludes a bidder and the effect of interceding with the agency's discretion by permitting the bidder's continued participation.

Clearly, the Department's rejection of Glasgow for the sole reason of its mistake in operating the computer screen "emasculated" the competitive bidding process that had *already* proceeded. Furthermore, the Department's rejection of Glasgow's bid based on its seemingly inconsequential mistake results in an imprudent use of the public wealth as well as unfairness to an otherwise qualified bidder. *See McCloskey.* For these reasons, I would reverse the Secretary's decision.

Judge SMITH–RIBNER and Judge FRIEDMAN join in this dissent.