Valdo R. DRAGANI, Appellant

v.

BOROUGH OF AMBLER and BFI Waste Services of PA, LLC d/b/a Allied Waste Services of Valley Forge.

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2011.
Decided Feb. 6, 2012.

William F. Fox, Jr., Audubon, for appellant.

Joseph E. Bresnan, Ambler, for appellee Borough of Ambler.

Dorothy A. Hickok, Philadelphia, for appellees BFI Waste Services of PA, LLC and Allied Waste Services of Valley Forge.

BEFORE: PELLEGRINI, Judge,[1] and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.

Valdo R. Dragani (Appellant) appeals from the order of the Montgomery County Court of Common Pleas (trial court), dated January 26, 2011, denying Appellant's request for a preliminary injunction to enjoin the Borough of Ambler (Borough) from awarding BFI Waste Service of PA, LLC, d/b/a Allied Waste Service of Valley Forge (BFI) a waste collection and recycling contract as the lowest responsible bidder under section 1402(a) of the Borough Code, 53 P.S. § 46402(a).[2]

---

[1] This case was assigned to the opinion writer before January 7, 2012, when Judge Pellegrini became President Judge.

[2] Section 1402(a) of the Borough Code provides as follows:

(a) All contracts or purchases in excess of ten thousand dollars ($10,000), except those hereinafter mentioned, shall not be made except with and from the lowest responsible bidder after due notice in one newspaper of general circulation in the borough, at least two times at intervals of not less than three days where daily newspapers of general circulation are available for such publication, in case of weekly newspapers, such notice once a week for two successive weeks. The first advertisement shall be published not more than forty-five days and the second advertisement not less than ten days prior to the date fixed for the opening of bids. Advertisements for contracts or purchases shall also be posted in a conspicuous place within the borough. Advertisements for contracts and purchases shall contain the date, time and location for opening of bids

In October of 2010, the Borough issued a public advertisement requesting sealed bids for its refuse, recyclables and yard waste hauling contract to provide service to 2,250 households over three years beginning on January 1, 2011. In relevant part, the bid specifications provide as follows:

8. BONDS & INSURANCE

A. CONSENT OF SURETY—Each Bidder must accompany his Bid with an officer-signed Consent of Surety from an approved *Surety Company that is licensed to transact business in the Commonwealth of Pennsylvania and is listed on the current United States Department of Treasury Circular 570 with its underwritten limitation therein stated at least equal to $20,000,000. The consent of surety shall state that the surety company in question unconditionally agrees to furnish the proper Performance Bond and a Labor and Material Bond where required covering up to the full amount of the Contract Price as security for the faithful performance of all work under the Contract including any option period required of the performance bond to be submitted.* The Bond shall be furnished prior to award of the Contract. Each Consent of Surety must include the surety's most recent available financial statement. *Failure to provide the required Consent of Surety at the time of bid submittal shall preclude a bid from being considered.*

B. PERFORMANCE BOND—Prior to the execution of the service contract the successful bidder will be required to furnish a performance bond for the full term of the 3–year or 5–year contract term accepted. *Annually renewable bonds are not acceptable.* Any bond can be reduced to cover the full amount of the remaining years of the contract as each year is completed. For option years the bond must equal 100% of the option year(s) when selected.

(Reproduced Record (R.R.) at 125a–26a) (emphasis added).

However, paragraph seventeen of the bid specifications states:

B. The Borough *reserves the right to accept any Bid,* and to reject any and all Bids, when such is deemed by the Borough to be in its best interest.

(R.R. at 195a) (emphasis added). Further, the Advertisement for Bids provides as follows:

The Borough of Ambler reserves the right, which is understood and agreed to by all bidders, to refuse any or all bids submitted when in the Borough's best interest to so refuse and also *reserves the right to waive any informality in bids received,* but any contract awarded will be to the lowest, responsible bidder.

(R.R. at 122a) (emphasis added).

Waste Management Inc., BFI, and Solid Waste Services, Inc., d/b/a J.P. Mascaro & Sons (Mascaro) submitted bids on November 30, 2010. With its bid, BFI included a consent of surety, cover letter, and sample

and shall state the amount of the performance bond determined under subsection (c). The amount of the contract shall in all cases, whether of straight sale price, conditional sale, bailment lease, or otherwise, be the entire amount which the borough pays to the successful bidder or his assigns in order to obtain the services or property, or both, and shall not be construed to mean only the amount which is paid to acquire title or to receive any other particular benefit or benefits of the whole bargain. In awarding contracts, council shall have the right to take into consideration such other factors as the availability, cost and quality of service.

53 P.S. § 46402.

performance bond from Fidelity and Deposit Company of Maryland (Fidelity–Maryland).[3] The cover letter stated that if BFI is awarded the contract, Fidelity–Maryland "has agreed to act as a surety on the bond(s) as specified in the in the bid proposal" and that "[a] copy of the bond form to be used is attached." (R.R. at 154a.) The sample bond form attached to the consent of surety is titled "PERFORMANCE BOND (Annual Form 1001)", but provides that "the term of this bond is for the period commencing _____ and expiring on _____." (R.R. at 155a.) At that time, Fidelity–Maryland was listed on Circular 570 with an underwriting authority of $16 million.

In a letter dated December 3, 2010, Mascaro notified the Borough that BFI's bid did not conform to the bidding instructions and that the contract, therefore, should be awarded to Mascaro as the lowest responsible bidder. In relevant part, Mascaro averred that: (1) paragraph 8 of the bid specifications requires a consent of surety from a surety company with an underwriting authority of $20 million, and the consent of surety provided by BFI was from Fidelity–Maryland, which had an underwriting authority of $16 million in Circular 570; and (2) paragraph 8 of the bid specifications requires a consent of surety that unconditionally agrees to provide a performance bond for the full term of the contract term accepted, and BFI submitted a consent of surety indicating it would provide a performance bond for one rather than three years. By letter dated December 7, 2010, BFI responded that the defects were nonmaterial and could be cured or waived by the Borough.

On December 22, 2010, the Borough awarded the contract to BFI, and on December 29, 2010, BFI provided the Borough with a letter from Zurich American Insurance Company (Zurich), Fidelity–Maryland's parent company, stating that Zurich would stand behind Fidelity–Maryland's consent of surety. At that time, Zurich was listed on Circular 570 with an underwriting authority of $571 million.

On January 3, 2011, Appellant, a resident taxpayer of the Borough, filed a complaint in equity seeking to permanently enjoin the award of the contract to BFI as the lowest responsible bidder and a petition for preliminary injunction seeking to enjoin the Borough and BFI from carrying out the contract.[4] Following a hearing on the preliminary injunction, the trial court denied Appellant's petition in an order dated January 28, 2011. Appellant filed an appeal to this Court, and the trial court issued an opinion in support of its order.

In its opinion, the trial court explained that the defects in BFI's bid were not statutory, that the Borough reserved the right to waive bid deficiencies in the bid specifications and in the advertisement for bids, and that the waiver of defects by the Borough did not confer a competitive advantage on BFI. Relying on our Supreme Court's decision in *Gaeta v. Ridley School District*, 567 Pa. 500, 788 A.2d 363 (2002), the trial court concluded that Appellant did not meet its burden to demonstrate a likelihood of success on the merits as required for a preliminary injunction.

On appeal to this Court,[5] Appellant asserts that the trial court erred in

---

**3.** Fidelity–Maryland had an underwriting authority of approximately $16 million in Circular 570 and BFI's bid was for $876,270.

**4.** Mascaro's in-house counsel represented Appellant before the trial court and represents Appellant on appeal to this Court.

**5.** As stated by our Supreme Court:

determining that he was not entitled to a preliminary injunction because BFI's bid did not conform to the bid specifications and, therefore, BFI was not the lowest responsible bidder. Specifically, Appellant avers that BFI's bid did not conform with paragraph 8 of the specifications because the bid did not include a consent of surety from a surety company listed on circular 570 with at least $20 million in underwriting authority or provide that Fidelity–Maryland unconditionally agreed to furnish a performance bond for the full amount and term of the proposed contract. Appellant asserts that these alleged defects were material and could not be waived.

In response, BFI asserts that, as required by the bid specifications, the consent of surety from Fidelity–Maryland was unconditional and provided that Fidelity–Maryland would issue a performance bond for the full term and amount of the contract. BFI also avers that although Fidelity–Maryland did not have an underwriting authority of at least $20 million as required by the bid specifications, the underwriting limitation is not statutory and, therefore, the Borough did not err in permitting BFI to cure the defect because doing so did not deny the Borough adequate assurance or result in a competitive advantage.

■■ This Court has repeatedly held that requirements set forth in a bidding document are mandatory and must be strictly adhered to in order for a bid to be valid. *Fedorko Properties, Inc. v. Millcreek Township School District*, 755 A.2d 118 (Pa.Cmwlth.2000); *Kimmel v. Lower Paxton Township*, 159 Pa.Cmwlth. 475, 633 A.2d 1271 (1993). The requirements in a bidding document are mandatory in order to "to invite competition and to

As an initial matter, we restate here that, in general, appellate courts review a trial court order refusing or granting a preliminary injunction for an abuse of discretion. We have explained that this standard of review is to be applied within the realm of preliminary injunctions as follows:
[W]e recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court].

\*     \*     \*

Thus, in general, appellate inquiry is limited to a determination of whether an examination of the record reveals that any apparently reasonable grounds support the trial court's disposition of the preliminary injunction request.
In ruling on a preliminary injunction request, a trial court has apparently reasonable grounds for its denial of relief where it properly finds that any one of the following essential prerequisites for a preliminary injunction is not satisfied. First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. Sixth and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.
*Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 573 Pa. 637, 645–47, 828 A.2d 995, 1000–01 (2003) (internal quotations and citations omitted).

guard against favoritism, improvidence, extravagance, fraud and corruption in the award of municipal contracts." *Dunbar v. Downington Area School District,* 901 A.2d 1120, 1126–27 (Pa.Cmwlth.2006) (citation omitted). Nonetheless, where the requirements in a bidding document are not required by statute and the bidding document reserves the right to waive defects, a non-compliant bid for public work may be accepted or cured if: (1) the effect of a waiver will not deprive a municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements; and (2) a waiver will not adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders. *Gaeta.*

In *Gaeta,* the school district issued bid specifications requiring a bid bond surety possessing a best rating of A- or better. The bid specifications also reserved the school district's right to waive irregularities. IBE Construction, Inc. (IBE) submitted a bid bond from a surety with a best rating of B. Subsequently, the school district contacted IBE and requested a compliant bid bond, which IBE provided the next day. The school district then awarded the contract to IBE, and Gaeta, a taxpayer in the school district, filed a petition for preliminary injunction seeking to prevent the school district from awarding IBE the contract. Following a hearing, the trial court denied Gaeta's request for a preliminary injunction. However, this Court reversed, concluding that specifications set forth in bidding documents are mandatory and must be strictly followed in order for bid submissions to be responsive.

On further appeal, our Supreme Court reversed that decision, noting as follows:

[T]he following two considerations are widely accepted as central in determining whether a non-compliant bid for public work may be accepted or cured:

first, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary standard of competition.

*Gaeta,* 567 Pa. at 508–09, 788 A.2d at 367–68. The court in *Gaeta* concluded that the bid defect at issue was not material because the effect of a waiver did not deprive the School District of adequate assurance and did not confer a competitive advantage as would compel bid rejection. With regard to the assurance factor, the court in *Gaeta* observed that, despite the use of imperatives, the bid specifications reserved the school district's right to waive defects. The court also noted the restrictive purpose, duration, and scope of liability associated with bid bonds favors a degree of latitude in terms of absolute responsiveness. However, the court did observe that the same degree of latitude should not be afforded to defects involving price discrepancies, failure to bid on all necessary terms, the omissions of cost or performance items, or defects pertaining to a performance bond. Concerning the competitive advantage factor, the court observed that any impact resulting from a B-rated security was negligible because the rating did not impact the cost of IBE's bid and IBE could have obtained the required bond from another surety at the same cost. Accordingly, the court reversed and remanded the matter to the trial court.

Appellant first complains that BFI failed to submit with its bid an unconditional consent of surety agreeing to provide a performance bond for the full term and

amount of the contract as required by paragraph 8 of the bid specifications because the consent of surety provided by Fidelity–Maryland included a sample bond that was annually renewable.

However, the consent of surety issued by Fidelity–Maryland specifically provided that it will execute "the Performance Bond and Payment Bond in the forms included in the Contract Documents or equivalent each in an amount of 100% of the contract amount ..." (R.R. at 136a.) The cover letter accompanying the consent of surety also stated that Fidelity–Maryland "has agreed to act as surety on the bond(s) as specified in the bid proposal" and that "[a] copy of the bond form to be used is attached." (R.R. at 137a.) The only indication that the performance bond would be for one year rather than the full term of the contract was the sample form that was attached to the consent of surety and cover letter. (R.R. at 138a). The form is clearly marked "sample only" and includes blanks for the insertion of dates that the performance bond will cover. In light of the express language in the consent of surety itself and the cover letter explaining that the performance bond would fully comply with the bid specifications, we conclude that BFI provided an unconditional consent of surety agreeing to provide a performance bond for the full term and amount of the contract as required by the bid specifications. Thus, in this respect, the trial court did not err in determining that Appellant failed to establish a likelihood of success on the merits, as required for a preliminary injunction.

■ Next, Appellant avers that BFI's failure to include a consent of surety from a company with at least $20 million in underwriting authority at the time BFI submitted its bid was a material defect that cannot be waived. In support, Appellant cites *Glasgow v. Pennsylvania De-partment of Transportation*, 851 A.2d 1014 (Pa.Cmwlth.2004), for the proposition that the Borough cannot waive a bid defect relating to a particular requirement in the bid specifications when the specifications provide that the bid will not be considered if that particular requirement is not met.

In *Glasgow*, the Department of Transportation (Department) solicited bids for a road construction project. The bid instructions included a direction to submit Disadvantaged Business Enterprise (DBE) information electronically on the Department's Electronic Contract Management System and also provided that the bid would be rejected if the DBE information was not submitted by the apparent low bidder. Following the submission of bids, the Department advised Glasgow that it was the apparent low bidder and ordered Glasgow to provide the DBE information. Subsequently, Glasgow placed all relevant information on the Department's website, but failed to press the submit button. The Department determined that the failure to hit the submit button was a failure to submit the DBE information and, consequently, awarded the contract to the next lowest responsible bidder. Glasgow filed a bid protest with the Department, which the Secretary of Transportation denied.

Our Court affirmed, holding that while a government entity may waive a bid defect, it may not do so if the defect involves the waiver of a mandatory requirement that the bid specifications treat as non-waivable. Specifically, we stated that:

> While the Department could have provided otherwise, it removed any discretion it had to waive the time to submit the information when it provided in the bid instructions that the bid would be rejected if the information was not provided within the specified time.

*Glasgow*, 851 A.2d at 1017. Thus, we did not apply the standard set forth in *Gaeta*

because the Department removed its discretion to waive a defect pertaining to the DBE information when it provided that the bid would be rejected if the DBE information was not submitted within the specified time.

In this case, we conclude that *Glasgow* is controlling. Although the bid instructions reserve the Borough's right to waive any informality and the bid specifications reserve the Borough's right to accept any contract, the Borough removed any discretion it had to waive a defect pertaining to the consent of surety when it provided that the bid would not be considered if the consent of surety required by the specifications was not provided at the time a bid is submitted. *Glasgow.* Here, BFI submitted a consent of surety from Fidelity–Maryland with its bid, which had an underwriting authority of $16 million per contract in Circular 570 rather than the $20 million required by the specifications. Thus, BFI did not provide the consent of surety required by the bid specifications at the time it submitted its bid. Because this requirement was mandatory, the failure to submit a consent of surety from a company with at least $20 million in underwriting authority was a legally disqualifying error.

Based on the foregoing, we conclude that the defect was material. *Glasgow.* In addition, we conclude that the trial court erred in determining that Appellant failed to establish a likelihood of success on the merits as required for the grant of a preliminary injunction.

Accordingly, we reverse the trial court's order and remand this matter to the trial court for further proceedings.

### ORDER

AND NOW, this 6th day of February, 2012, the order of the Montgomery County Court of Common Pleas (trial court), dated January 26, 2011, is hereby reversed and the matter is remanded to the trial court for further proceedings consistent with the foregoing opinion.