IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Leonard S. Fiore, Inc.,            :
             Petitioner     :
      v.                :    No.  489 C.D. 2022
                            :    Submitted: September 23, 2022
Department of General Services,     :
             Respondent    :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                      FILED:  December 19, 2022


Leonard S. Fiore, Inc., (Fiore) filed a petition for review (Petition) of the May 5, 2022 Final Determination of the Deputy Secretary of Public Works (Secretary)[1] denying Fiore's bid protest, which Fiore filed pursuant to the Commonwealth Procurement Code (Procurement Code), 62 Pa. C.S. §§ 101-2311.[2]  After review, we affirm the Secretary's Final Determination.

---

[1] Robert A. Carr, the Deputy Secretary of Public Works for the Department of General Services issued the final determination in this matter.  According to Section 1711.1(f) of the Commonwealth Procurement Code (Procurement Code), 62 Pa. C.S. §§ 101 - 2311, the head of the purchasing agency or his designee shall issue a written determination within 60 days of a bid protest and this determination constitutes the final order of the purchasing agency.  62 Pa. C.S. § 1711.1(f). Accordingly, we refer to the final determination in this case as that of the Secretary.

[2]  Where a bidder or prospective bidder is "aggrieved in connection with the solicitation or award of a contract, [the bidder] . . . may protest to the head of the purchasing agency in writing."  62 Pa. C.S. § 1711.1(a).

# BACKGROUND

In October 2021, the Department of General Services (DGS) issued a Request for Proposal (RFP) to obtain bids for the construction of an Information Commons Building, Project No. DGS 405-58.1 Phase 1, at East Stroudsburg University (Project). Certified Record (C.R.) at 355. The RFP contained a Small Diverse Business (SDB) participation goal of 8% and a Veteran Business Enterprise (VBE) participation goal of 3%. *Id*. The RFP included SDB and VBE submittal packets that bidders had to complete and submit with their proposals. *Id*. The submittal packets included instructions and a request for Good Faith Efforts Waivers for the SDB and VBE goals. *Id*.

The RFP's instructions required the SDB and VBE submittals to include either the "[SDB or VBE] Utilization Schedule, the Good Faith Efforts Documentation to Support Waiver Request, or both." C.R. at 17. The instructions also indicated that bidders had to meet the SDB and VBE participation goals in full or demonstrate they made Good Faith Efforts by completing the Good Faith Efforts Waiver. C.R. at 31. The RFP defined "Good Faith Efforts" to meet the VBE participation goal as follows:

> The "Good Faith Efforts" requirement means that when requesting a waiver, the [bidder] must demonstrate that it took all necessary and reasonable steps to achieve the VBE participation goal. Those steps are considered necessary and reasonable when their scope, intensity, and relevance could reasonably be expected to obtain sufficient VBE participation, even if those steps were not fully successful. The Issuing Agency and Department of General Services' Bureau of Diversity, Inclusion and Small Business Opportunities [(the Bureau)] will determine whether or not the [bidder] requesting a Good Faith Efforts [W]aiver made adequate Good Faith Efforts by considering the quality, quantity, and intensity of the [bidder's] efforts. Mere pro forma efforts are not Good Faith Efforts to meet the VBE participation requirements. The determination concerning the sufficiency of the [bidder's] Good

2

Faith Efforts is subjective; meeting quantitative formulas is [sic] not required.

C.R. at 109.

Among its instructions, Section VI of the RFP identified the following four "fatal errors:"

> The following errors will result in rejection of a bid or proposal as nonresponsive:
> a. Failure to submit a completed SDB Participation Submittal (SDB-2);
> b. Failure to submit an SDB Utilization Schedule (SDB-3), unless the bidder or offer[or] is seeking a complete Good Faith Efforts [W]aiver;
> c. Failure to make commitments to and list DGS-verified SDBs that will be used to meet the SDB participation goal, unless the bidder or offeror's commitments to other DGS-verified SDBs meet or exceed the SDB Participation goal;
> . . . .
> d. Failure to submit a Good Faith Efforts [W]aiver request when not fully meeting the SDB participation goal.

C.R. at 84-85.

On December 10, 2021, DGS received the proposals for the RFP. *Id.* at 356. Both Fiore and Skepton Construction, Inc., (Skepton)[3] submitted bids for the Project. *Id.*

In Skepton's bid submission packet, Skepton indicated that it would meet the SDB participation goal and identified the five DGS-certified SDB firms that it committed to utilize toward meeting the SDB participation goal. *Id.* In fact, Skepton indicated the commitment to those firms totaled 8.5% of the contract value, which exceeded the 8% SDB goal. *Id.* However, Skepton also included its letters of commitment with the five identified firms and listed the dollar value of the commitment to each firm. *Id.* The total dollar value of its commitment to the SDB

---

[3] Skepton has intervened in this matter.

3

firms totaled $3,961,778, while its cost was $50,085,000, translating to a 7.91% SDB participation goal. *Id.* DGS admits to the mathematical discrepancy. C.R. at 361.

Regarding the VBE requirements, Skepton requested a full waiver of the VBE participation goal of 3%. *Id.* With its request, Skepton included information indicating that it reached out to seven VBE firms via electronic mail (e-mail) on two occasions to attempt to solicit them. C.R. at 356-57. Skepton indicated that all trades were advertised to all VBE subcontractors using a variety of bidding applications, but that it received no VBE quotes in response to its outreach efforts. Skepton reported that each of the listed VBE firms were unavailable, unable to prepare a proposal, or did not respond to its efforts. *Id.*

The Bureau reviewed the SDB and VBE participation packets. *Id.* at 357. The Bureau determined that Skepton's SDB packet satisfied the mandatory requirements and deemed its submission to be responsive. *Id.* Additionally, the Bureau determined Skepton demonstrated sufficient Good Faith Effort to meet the VBE participation goal. *Id.* After deeming Skepton's proposal to be most advantageous to the Commonwealth, DGS awarded the contract to Skepton. *Id.*

In response, Fiore filed its bid protest, in which it alleged Skepton did not submit a responsive bid. *Id.* Specifically, Fiore asserted Skepton's bid failed to meet the RFP's SDB requirements because the dollar value of the SDB commitments only added up to 7.91% and, therefore, Skepton failed to meet the 8% goal. *Id.* Additionally, Fiore alleged Skepton failed to demonstrate sufficient Good Faith Effort to support its request for waiver of the VBE goal. *Id.*

On May 5, 2022, the Secretary issued a Final Determination concluding Skepton's proposal was responsive to the RFP and denying Fiore's bid protest. *Id.* at 364. The Secretary reasoned Skepton's mathematical error was not one of the

errors listed in the RFP's instructions that would have caused DGS to deem the submittal nonresponsive. *Id*. The Secretary found DGS's waiver of the calculation error and reliance on the percentage commitment was not an abuse of discretion where the contract documents express, monitor, and enforce the SDB participation goals as percentages rather than dollar amounts. *Id*. The Secretary concluded there was no unfair advantage to Skepton since Skepton complied with the mandatory SDB requirements by making an 8.5% commitment, despite its calculation error and, therefore, DGS properly deemed its proposal responsive. *Id*. The Secretary outlined that:

> The terms of the RFP further allow DGS to waive any informality or technical deficiencies. Pennsylvania law also allows governmental bodies to waive technical defects where such a waiver would not afford an unfair advantage to the offeror. A mathematical error between the percentages and corresponding dollar values is [a] technical defect that may be waived by DGS.

*Id*. at 361. Additionally, the Secretary determined the information Skepton submitted with its VBE Good Faith Effort Waiver request was adequate to demonstrate Good Faith Effort to meet the VBE goal, and it was within DGS's discretion to grant the waiver. *Id*. at 364.

## ARGUMENTS ON APPEAL

On appeal, Fiore argues the decision by DGS to award the contract to Skepton was an arbitrary and capricious exercise of its discretion and contrary to the law, because Skepton's bid did not comply with the material and mandatory provisions of the RFP, DGS's waiver of the bid defects directly contradicts the language in the RFP, DGS's waiver ensures that the contract will not be performed in accordance with the requirements of the RFP, and Skepton's failure to comply with the RFP

gave Skepton a competitive advantage over Fiore and other bidders. Fiore's Br. at 12.

In response, DGS argues the mathematical errors in the SDB submittal did not require DGS to reject Skepton's bid because it did not fall under one of the "fatal errors" identified in the RFP. DGS's Br. at 5. DGS asserts that its decision to grant Skepton a Good Faith Effort Waiver for the VBE participation goal was not an arbitrary and capricious exercise of agency discretion because Skepton satisfied the basic requirements for the waiver under the terms of the RFP. *Id*.

## DISCUSSION

In deciding appeals from final determinations on bid protests, this Court will affirm the determination of the purchasing agency so long as it is clear from the record certified by the purchasing agency "that the determination is [not] arbitrary and capricious, an abuse of discretion or [ ] contrary to law." Section 1711.1 of the Procurement Code, 62 Pa. C.S. §1711.1.

Under the Procurement Code, a "responsible offeror" is an offeror "that has submitted a *responsive proposal* and that possesses the capability to fully perform the contract requirements in all respects and the integrity and reliability to assure good faith performance." 62 Pa. C.S. § 103 (emphasis added). A "responsive proposal" is defined in the Procurement Code as a proposal "which conforms in all material respects to the requirements and criteria in the [RFP]." *Id*.

For a bid proposal to be valid, it must comply with any mandatory qualifications set forth in the RFP. *Glasgow, Inc. v. Pa. Dep't of Transp.*, 851 A.2d 1014, 1017 (Pa. Cmwlth. 2004). A violation of mandatory bidding instructions constitutes a legally disqualifying error for which a purchasing agency may reject a bid. *Id*. Thus, in Pennsylvania, it has traditionally been held that where a term or

condition in an RFP is "mandatory," a bidder must strictly adhere to the requirement to be awarded the contract. *See Dragani v. Borough of Ambler*, 37 A.3d 27, 31 (Pa. Cmwlth. 2012). Notwithstanding, our Supreme Court explained that,

> courts have not eliminated the discretionary aspect of executive decision making when the government is confronted with a non-compliant bid that it might choose to consider to achieve effective utilization of the public fisc. In describing the available latitude, conceptions of materiality and competitive advantage have been utilized, both of which [ ] are closely tied to the legislative objectives underlying competitive bidding statutes. Accordingly, the following two considerations are widely accepted as central in determining whether a non-compliant bid for public work may be accepted or cured:

> first, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary standard of competition.

*Gaeta v. Ridley Sch. Dist.*, 788 A.2d 363, 367-68 (Pa. 2002) (internal citations omitted).

Thus, a purchasing agency has discretion to waive non-material bid defects where the bidder's noncompliance "(1) does not deprive the agency of the assurance that the contract will be entered into and performed and (2) does not confer a competitive advantage on the bidder." *Glasgow, Inc.*, 851 A.2d at 1017 (citation omitted). However, the purchasing agency may only waive a bid defect where the defect does not involve a mandatory requirement that the bid instructions treat as non-waivable. *Id.* Where the RFP's instructions indicate a bid will be rejected if certain qualifications are not met, the agency does not have discretion to waive those qualifications. *Id.*

7

It is well settled that purchasing agencies have discretion to decide which criteria are mandatory and which criteria are waivable in an RFP. *KPMG LLP v. Dep't of Hum. Servs.*, 276 A.3d 308, 314-15 (Pa. Cmwlth. 2022). This Court addressed an issue similar to the one we address here in *Language Line Services, Inc. v. Department of General Services*, 991 A.2d 383 (Pa. Cmwlth. 2010). In *Language Line Services*, we outlined the following:

> [The rejected bidder] argues that [the purchasing agency] erred in awarding the contract to [the successful bidder] when its proposal failed to meet several nonwaivable requirements set forth in the RFP. Specifically, [the rejected bidder] alleges that [the] proposed program manager did not have the required minimum experience, [the successful bidder] failed to identify its customer service personnel or demonstrate that they had the required experience, and it failed to provide information directly requested by the RFP. *However, there were only two mandatory responsiveness requirements in the RFP at issue— timeliness of receipt and proper signature execution. [The successful bidder] met both of these requirements.* Our Supreme Court has noted that imperatives in bid documents are not necessarily dispositive of materiality. Therefore, even if the RFP in this case indicated that a proposed program manager "must" have a certain level of experience, such language would not necessarily make this requirement material or nonwaivable. *None of the issues [the rejected bidder] raises amount to mandatory requirements and none were indicated as such in the RFP.*

*Id.* at 390 (emphasis added; internal citations omitted). We applied this reasoning to the facts of *Language Line Services* and held that because the RFP specifically indicated the timely receipt and proper signature execution were the only two mandatory requirements and the successful bidder met those two requirements, the successful bidder submitted a responsive bid. *Id.* Thus, in accordance with the plain language of the RFP, we held the successful bidder's failure to include other information required in the RFP was waivable by the agency. *Id.* Further, this Court outlined in *Rainey v. Borough of Derry*, 641 A.2d 698, 702 (Pa. Cmwlth. 1994), that

8

a deficiency in a bid can be waived or cured unless the waiver would deprive the purchasing agency of its assurance that the contract will be performed or the waiver would adversely affect the competitive bidding by placing a bidder in a competitive advantage.

Here, we review the plain language of the RFP to determine whether the Secretary erred in his determination that Skepton satisfied the mandatory requirements of the RFP for the SDB and VBE submissions. First, we consider whether Skepton's mathematical error related to its SDB participation goal rendered its bid proposal nonresponsive. The RFP specifies the SDB participation goal as 8%. C.R. at 172. Throughout the RFP, the SDB and VBE participation goals are expressed as percentages, rather than dollar amounts. *Id*. at 359. By committing to 8.5%, Skepton committed to an SDB goal of more than the minimum 8% required by the RFP. While Skepton's error in the mathematical calculation of the proposed numbers yields a result that is below 8%, it was the percentage commitment required by the RFP, not a specific dollar amount awarded.

Further, as outlined above, Section VI of the RFP specifically identifies the four "fatal errors" which will result in rejection of a bid or proposal as nonresponsive. First, Skepton submitted a completed SDB Participation submittal, albeit with a mathematical error in its calculation. Second, Skepton submitted an SDB utilization schedule. Third, Skepton made commitments to and listed DGS-verified SDBs that will be used to meet the SDB participation goal. Fourth, Skepton was not required to submit a Good Faith Efforts Waiver request because it committed to fully meeting the SDB participation goal. Because Skepton complied with the RFP's percentage commitment requirement and did not commit any of the four "fatal errors" identified in the RFP, the mathematical calculation error is not a material or

9

nonwaivable defect. Thus, any error in the calculations and proposed dollar amounts is a deficiency that can be waived or cured by DGS at its discretion.

Additionally, we conclude DGS's waiver of the mathematical defect in Skepton's submission did not deprive the Commonwealth of any assurance that the contract will be performed according to its specific requirements as Skepton committed to the 8.5% SDB participation goal and the contract documents reflect the percentage commitment rather than any dollar amounts. There is no indication that Skepton will not perform the contract to its specified requirements. Further, DGS's waiver of the mathematical error in Skepton's bid proposal did not bestow a competitive advantage to Skepton over Fiore or other bidders because, again, it committed to the 8.5% SDB participation goal.

Finally, DGS had discretion in its consideration of Skepton's Good Faith Efforts Waiver as the RFP's instructions specify that the Bureau "will determine whether or not the [bidder] requesting a Good Faith Efforts Waiver made adequate Good Faith Efforts by considering the quality, quantity, and intensity of the [bidder's] efforts." C.R. at 109. Along with its Good Faith Efforts Waiver request, Skepton identified VBE firms that it reached out to via e-mail and indicated that it received no VBE quotes in response to its outreach efforts. Skepton reported that each of the listed VBE firms were either unavailable, unable to prepare a proposal, or unresponsive. Because the RFP indicates that the sufficiency of the Good Faith Efforts to meet the VBE participation requirements is "subjective" and that "meeting qualitative formulas is not required[,]" it was at DGS's discretion to determine whether Skepton's Good Faith Efforts were sufficient. Fiore has not shown that DGS abused that discretion.

10

Based on the plain language of the RFP requirements and Skepton's proposal submission, we conclude that Skepton submitted a responsive bid. As such, the Secretary properly determined that DGS did not engage in arbitrary or capricious conduct, or otherwise commit legal error, in awarding the contract to Skepton. Accordingly, we affirm the Secretary's Final Determination.

_____
STACY WALLACE, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Leonard S. Fiore, Inc.,          :
               Petitioner   :
     v.                     :   No.  489 C.D. 2022
                           :
Department of General Services,   :
             Respondent  :

# O R D E R

**AND NOW**, this 19th day of December, 2022, the Deputy Secretary's May 5, 2022 Final Determination of the Pennsylvania Department of General Services denying Leonard S. Fiore, Inc.'s bid protest is **AFFIRMED**.

 

_____
STACY WALLACE, Judge