# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ascend Management Innovations
LLC,
                  Petitioner

                  v.

Department of Human Services,
                  Respondent

:
:
:
:
:
:
:
:
:
:

No. 1273 C.D. 2017
Argued: March 6, 2018


**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** Judge
                **HONORABLE P. KEVIN BROBSON,** Judge
                **HONORABLE MICHAEL H. WOJCIK,** Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**            **FILED: March 23, 2018**


Ascend Management Innovations LLC (Ascend) petitions for review of the Final Determination of the Pennsylvania Department of Human Services (Department or DHS), dated August 29, 2017, denying as untimely Ascend's Bid Protest No. 2017-BP-13 (protest) to Department's selection of Keystone Peer Review Organization, Inc. (KEPRO), for negotiations of a contract under Department's Request for Quote No. 6100041382 (RFQ). Ascend claims that its protest was timely because it was challenging Department's selection of KEPRO as a responsible contractor, not the terms of the RFQ, that Department should have disclosed to Ascend the documents it requested, and that Ascend is entitled to an evidentiary hearing on whether KEPRO is a responsible contractor. Also before this

Court is Department's application to lift the stay this Court granted by order dated November 1, 2017, "staying DHS and KEPRO from executing a contract or DHS from issuing a purchase order under the RFQ pending resolution of Ascend's Petition for Review." *Ascend Mgmt. Innovations LLC v. Dep't of Human Servs.* (Pa. Cmwlth., No. 1273 C.D. 2017, filed Nov. 1, 2017) (Cohn Jubelirer, J., single judge op.) (*Ascend I*), slip op. at 13. Upon review, we find that Ascend's protest was timely, and remand the matter to DHS for a reexamination of the merits of Ascend's protest.

## I. Background

According to the allegations in Ascend's Petition for Review (Petition), Ascend has been a provider of specialty and standardized assessments, including the American Association on Intellectual and Developmental Disabilities' (AAIDD) Supports Intensity Scale (SIS). AAIDD owns the intellectual property rights associated with SIS. "[T]he SIS . . . measures the pattern and intensity of supports that an adult with intellectual and developmental disabilities needs to be successful while living an everyday life in the community." (Petition ¶ 13.) The SIS is complex to administer. "[E]ach assessment contains 86 items that reflect activities involved in a successful life in the community along with behavioral and medical needs." (*Id.* ¶ 14) "The SIS requires a 1.5-to-2.5 hours of simultaneous interview with a team of respondents who know the individual well." (*Id.* (emphasis omitted).) Because of the complexity of SIS, AAIDD requires that all SIS assessors "[h]ave a four-year[] college degree and meet experience requirements," "[b]e trained using AAIDD training materials," and pass a test administered by an AAIDD trainer, as well as annual reviews. (*Id.* ¶ 16.) Ascend claims that it performs over 18,000 SIS

2

assessments a year "and to date has performed over 100,000." (*Id.* ¶ 22.) Since 2007, Ascend has provided the Commonwealth with SIS assessments statewide, and a recent review of Ascend's Commonwealth SIS dataset, conducted by Human Services Research Institute, found that 100% of Ascend's assessments were valid. In contrast, according to Ascend, "AAIDD has noted that, even with appropriate training, there are multiple states where 30% of administered SIS assessments were found to be unreliable." (*Id.* ¶ 36.)

On April 11, 2017, DHS issued the RFQ. The relevant portions are as follows:

> **Overview of Project**. The Centers for Medicare & Medicaid Services ("CMS") requires that DHS-ODP [Office of Developmental Programs] use a statewide standardized needs assessment to ensure that the necessary supports and services are consistently and appropriately delivered to individuals enrolled in the Person/Family Directed Support ("P/FDS") and Consolidated waivers. The needs assessment must also be administered to individuals receiving Autism services, and individuals receiving services in private and public Intermediate Care Facilities for Individuals with Intellectual Disabilities ("ICF/ID"), and individuals on DHS-ODP's waiting list and individuals identified to enter the programs. The purpose of this RFQ is to obtain a qualified Contractor to administer a standardized needs assessment selected by DHS. In addition, the selected Contractor will be required to document the results of the assessment tool and enter the results into an information system designated by DHS. **The designated system is currently SIS Online, but DHS may change the designated system at any time.**

(RFQ, Part I-3, Reproduced Record (R.R.) at 24a (emphasis added).)

Under Part III, entitled "Technical Submittal," the RFQ stated as follows:

**III-1. Objectives.**

> **A. General.** The objective of this procurement is to secure the services of a Contractor to administer standardized needs assessment for individuals enrolled in the Consolidated and P/FDS waivers . . . .

3

**B. Specific.** To achieve the general objective, the Department has identified the following specific objectives:

1. The selected Contractor must employ and utilize an adequate number of users to support the required volume levels. A "user" is defined as a person who administers an assessment using DHS's designated statewide needs assessment tool; who enters assessment results into the information system designated by DHS and who makes changes to the data entered into the information system designated by DHS.
2. The selected Contractor must meet volume and timeline needs defined in **Part III** when performing the administration of the designated statewide needs assessment.
3. The selected Contractor will capture and enter the needs assessment results into the DHS designated information system within the time period defined in **Part III, Section III-9 Tasks.**

**III.2. Nature and Scope of Project**. This Project includes administering a needs assessment instrument . . . .

**DHS-ODP utilizes the Supports Intensity Scale™ ("SIS™") as its needs assessment tool**. The American Association on Intellectual and Developmental Disabilities ("AAIDD") is responsible for developing and maintaining the SIS™ tool.

The selected Contractor **will** also be responsible for administering additional questions as defined by DHS-ODP, referred to as "the PA Supplement" **along with SIS™**. The selected Contractor **will administer the assessments using the SIS** Online version. **The selected Contractor must have the capability to administer this version**. The Department estimates that the administration of each face to face assessment takes about 1.5 to 3 hours to complete, not including travel to and from a designated location and the activities associated with coordination or activities related to submission of the completed assessment.

(*Id.* at Part III-1, III-2, R.R. at 35a (emphasis added).)

4

Continuing under "Technical Submittal," for training requirements, the RFQ stated as follows:

> **B. Training.** The selected Contractor **must** satisfy the following training requirements:
>
> 1. **Each user must be trained by AAIDD-certified trainers on how to administer the SIS Online assessment tool** and to enter or change data in the information system that is designated by DHS as the storage repository for this information.
> 2. Each user must participate in other required trainings, as defined and approved by DHS, which may include but are not limited to the following: An Overview of ODP Programs; Everyday Lives; Individual Support Plans; Person-Centered training; specific trainings on Autism, and an Overview of Pennsylvania's Medicaid Waivers.
> 3. The selected Contractor shall maintain records demonstrating training requirements have been met in accordance with the terms of the purchase order.
>
> Prior to SIS Online training, the selected Contractor will require that all **SIS and PA Supplement users** are:
>
> 1. **Fully credentialed, with evidence the user meets AAIDD user qualifications**;
> 2. Determined to have no conflict; and
> 3. Approved by the DHS Project Manager.
>
> The selected Contractor shall maintain records demonstrating that **all SIS and PA Supplement users meet all training requirements**.

(*Id.* at Part III-3.B, R.R. at 36a-37a (emphasis added).)

Still under "Technical Submittal," but for the subheadings "Tasks" and "Scheduling," the RFQ provided: "The selected Contractor **must** schedule an assessment meeting with the individual and other required attendees. **The selected Contractor must use an online scheduling mechanism that is compatible with SIS Online**." (*Id.* at Part III-9.A.1, R.R. at 43a (emphasis added).)

5

For "Accuracy/Data Integrity" under "Technical Submittal" and "Tasks," the RFQ provided:

> . . . . In lieu of conducting the inter-rater, inter-respondent and test/re-test reliability, the selected Contractor may complete AAIDD required Interviewer Reliability and Qualifications Reviews ("IRQR") tests. Individual users must achieve at least an 85% score on the IRQR to pass. **If a user does not pass, the user is not permitted to administer SIS assessments**.

(*Id.* at Part III-9.D, R.R. at 44a (emphasis added).)

For "Provider and Stakeholder Engagement," under "Technical Submittal" and "Tasks," the RFQ provided:

> The selected Contractor **must** work with DHS-ODP to revise its handouts and educational material to make them concise and helpful for those in the various stages of the process. The selected Contractor will tailor the handouts and educational material to those currently receiving an initial **SIS**; those waiting for supports; and those on a routine quinquennial assessment.

(*Id.* at Part III-9.F, R.R. at 44a (emphasis added).)

In fiscal year 2015/16, the RFQ noted, more than 9,000 assessments were completed, and that Department anticipated up to 11,004 assessments in a calendar year during the term of the purchase order. (*Id.* at Part III-2, III-3.C, R.R. at 36a-37a.)

Ascend and KEPRO both submitted a bid in response to the RFQ, although, at the time, Ascend did not know about KEPRO's submission. Thereafter, Department invited Ascend to reevaluate its original pricing because there was a "marginal difference" between Ascend's bid and that of KEPRO, although the letter did not reveal KEPRO's identity. (R.R. at 64a.)

6

On June 26, 2017, Department notified Ascend that it had not selected Ascend for negotiations under the RFQ. Instead, Department selected KEPRO.

On June 30, 2017, Ascend filed its protest with Department, alleging, in short, that KEPRO was not a responsible contractor because it lacked the qualifications and experience to administer SIS assessments. (Bid Protest, R.R. at 2a, 5a.) Ascend alleged that AAIDD has never had any relationship with KEPRO; thus, KEPRO was not authorized to administer a SIS assessment and, if it did so, the results would not be considered valid. (*Id.* at 4a.) As an offer of proof, Ascend stated that it had contacted two representatives of AAIDD, which Ascend identified by name, who "confirmed that KEPRO has never worked with AAIDD to acquire permission to conduct SIS assessments, has never received required AAIDD SIS training, has never received required SIS competence testing, and has never submitted SIS data to AAIDD or through SIS Online for quality monitoring." (*Id.* at 3a-4a.) KEPRO, Ascend added, had done nothing with AAIDD other than obtain a quote from it contingent on KEPRO obtaining a contract with the Commonwealth. Further, Ascend had obtained a proposal KEPRO submitted within the last two years to the State of Tennessee, in which KEPRO allegedly "misrepresented its experience in performing SIS assessments in West Virginia and Maryland." (*Id.* at 4a ("KEPRO did not disclose that SIS assessments it supposedly completed did not have the approval of AAIDD. In fact, in West Virginia, AAIDD took the unusual step of requiring the State of West Virginia to stop inappropriate and unapproved use of the SIS statewide.").) Ascend offered to submit a copy of KEPRO's proposal to the State of Tennessee to Department. Ascend added that even the unauthorized SIS assessments that KEPRO completed in West Virginia and Maryland were extremely small in number and done over very short project durations. Ascend argued that

7

KEPRO misrepresented its experience with the SIS assessment to Department, and that, as a result, Department may have awarded technical points to KEPRO that were unwarranted. (*Id.*)

As relief, Ascend requested, *inter alia*, documents KEPRO submitted to Department "related to any past, current, or prospective contract with AAIDD, any past, current or prospective AAIDD training or competence testing, and any results from any quality monitoring from any SIS assessments supposedly administered by KEPRO," as well as an evidentiary hearing. (*Id.* at 5a.)

KEPRO answered, arguing that the RFQ did not require SIS assessment services but, more generally, needs assessment administration services. (KEPRO Answer, R.R. at 7a-9a.) If Ascend had wanted the RFQ to provide for limiting experience to SIS experience alone, Ascend should have requested Department to so limit the RFQ. (*Id.* at 11a.) In any case, KEPRO alleged, it has SIS experience.

DHS-Office of Developmental Programs (ODP) also responded to Ascend's protest, arguing it was not timely. (ODP Answer, R.R. at 15a-16a.) Essentially, ODP stated, Ascend was arguing that prior SIS experience should have been a requirement of the RFQ. Ascend had notice of the requirements of the RFQ on April 11, 2017, when the RFQ was issued. Ascend had to lodge its protest within seven days thereof, and, since Ascend did not do so, its protest was untimely. In any event, ODP argued, even if timely, Ascend's protest lacked merit because, *inter alia*, the RFQ did not require SIS experience. (*Id.* at 16a.) Ascend's argument that KEPRO's technical submittal contained misrepresentations about its SIS experience was based on speculation. Regarding Ascend's request for portions of KEPRO's proposal, ODP responded that KEPRO's proposal is confidential until a contract is awarded, the documentation is unnecessary to the determination of Ascend's protest, and the

8

Commonwealth Procurement Code[1] (Procurement Code) does not provide for discovery. Finally, as to Ascend's request for an evidentiary hearing, since Ascend had offered no material facts in support of its protest, let alone disputed material facts, no hearing was warranted.

In reply, Ascend argued that its protest was timely because it was challenging Department's selection of KEPRO as a responsible contractor, not the terms of the RFQ. The terms of the RFQ, Ascend contended, were clear: the RFQ required the use of the SIS assessment, and KEPRO has no SIS experience. Moreover, Department had used SIS for the past 10 years, and if Department was seeking an alternative assessment tool, it should have specifically said so in the RFQ. Ascend further argued that it was entitled to those portions of KEPRO's proposal regarding its experience with SIS or some other assessment tool. Ascend stated it was not seeking discovery but information underlying the focus of its protest, and upon which ODP was clearly relying.[2]

On August 29, 2017, the Designee for the Secretary of Human Services, the Director of the Bureau of Administrative Services (Designee), issued a Final Determination denying Ascend's protest. (Final Determination at 10.) The Designee held that Ascend's protest regarding the necessity of SIS experience was untimely and, in any event, lacked merit. In essence, the Designee stated, Ascend was contending that prior SIS experience should have been a requirement of the RFQ, but such a contention had to be made within seven days of April 11, 2017, when the RFQ was issued, making Ascend's June 30, 2017 protest untimely. The

---

[1] 62 Pa. C.S. §§ 101-4509.
[2] Attached to Ascend's reply papers was an exhibit highlighting where in the RFQ SIS was mentioned.

9

Designee concluded that the only mandatory requirements in the RFQ were that the "bid" be timely received and properly signed. (*Id*. at 5-6.)

Even if the protest was timely, the Designee determined that Ascend's protest failed on the merits. The Designee stated that the RFQ did not require prior SIS experience, and Department specifically reserved the right to change the designated assessment tool at any time. Therefore, it was immaterial if KEPRO had any SIS experience. Further, Department was required to take into account all the criteria in selecting the best value contractor and not just one aspect of the technical submittal. (*Id*. at 6-7.) The Designee also found Ascend's allegation that KEPRO's submittal contained misrepresentations or inaccurate information unsupported by any evidence. (*Id*. at 7-8.) According to the Designee, even if KEPRO submitted a proposal to the State of Tennessee containing misrepresentations, such did not lead to the conclusion that KEPRO's submittal to Department contained any misrepresentations. (*Id*. at 8.) In any case, even if KEPRO is inexperienced in performing SIS assessments, the Designee concluded that such did not render KEPRO incapable of obtaining the necessary training and administering SIS assessments "should specific SIS assessments be required." (*Id*. at 7.) Thus, the Designee found that Ascend failed to meet its burden of proof showing that KEPRO was unqualified or misrepresented its SIS assessment experience.

The Designee also denied Ascend's request for documents and an evidentiary hearing because the Designee was able to reach his determination based solely on the record before him. (*Id*. at 9.)

Thereafter, Ascend filed with this Court a Petition for Review of Department's Final Determination.

On November 1, 2017, this Court granted Ascend's application for a stay "to the extent of staying DHS and KEPRO from executing a contract or DHS from issuing a purchase order under the RFQ pending resolution of Ascend's Petition." *Ascend I*, slip op. at 13. This Court also expedited the briefing of this case.

## II.    Discussion

### A. Timeliness

Ascend argues that, contrary to Department's conclusion, Ascend was not protesting the terms of the RFQ but Department's selection of KEPRO as a responsible contractor.[3] The plain terms and core purpose of the RFQ were to meet SIS-related objectives. Indeed, the RFQ is rife with references to SIS. Ascend did not know of KEPRO's proposal until Department selected KEPRO on June 26, 2017. Four days later, Ascend filed its protest on the basis that KEPRO misrepresented its experience and ability to conduct SIS assessments. Therefore, Ascend submits, its protest was timely.

Department responds that Ascend's protest was untimely because Ascend was challenging Department's decision not to mandate SIS experience in the RFQ. The RFQ was issued on April 11, 2017, at which point Ascend would have had knowledge of the basis for its protest, making Ascend's protest more than two months later untimely.[4]

---

[3] This Court's standard of review is limited to determining whether substantial evidence supports the necessary findings of fact, whether an error of law was committed, or whether constitutional rights were violated. *Cardiac Science, Inc. v. Dep't of Gen. Servs.*, 808 A.2d 1029, 1032 n.3 (Pa. Cmwlth. 2002).

[4] KEPRO has intervened and submitted a brief in support of the Final Determination. KEPRO reiterates the arguments of Department.

Under Section 1711.1(b) of the Procurement Code, 62 Pa. C.S. § 1711.1(b), a protestant has seven days from the time it "knew or should have known of the facts giving rise to the protest" to file a protest. The question here is whether Ascend knew, or should have known, of the facts giving rise to its protest on April 11, 2017, because it was challenging the terms of the RFQ, or on June 26, 2017, because it was challenging Department's selection of KEPRO.

In order to resolve this question, we must look to the terms of the RFQ to determine if the RFQ required the selected contractor to have the ability to administer SIS assessments from the onset of the contract. *See Clairton Slag, Inc. v. Dep't of Gen. Servs.*, 2 A.3d 765, 773 (Pa. Cmwlth. 2010) (stating that a court reviewing a contract "must strive to ascertain and give effect to the intent of the parties as found in the written contract"). In the technical submittal portion of the RFQ, one of the specific objectives identified in the RFQ was that the selected contractor "employ and utilize an adequate number of users to support the required volume levels." (R.R. at 35a.) The RFQ defined a "user" as "a person who administers an assessment using DHS's designated statewide needs assessment tool; who enters assessment results into the information system designated by DHS and who makes changes to the data entered into the information system designated by DHS." (*Id.*) The RFQ stated that "DHS-ODP utilizes the . . . **SIS** . . . **as its needs assessment tool**," and that "[t]he selected Contractor **will** administer the assessments **using the SIS Online version**," which "[t]he selected Contractor **must** have the **capability to administer.**" (R.R. at 35a (emphasis added).) In addition to this portion of the RFQ, as this Court noted in partially granting Ascend a stay,

> [t]here are multiple statements in the RFQ regarding the requirements of using SIS assessments, the complexity of the SIS assessments and their administration, the large number of assessments that DHS expects

12

the contractor to complete each year, DHS's expectation that SIS assessments would be administered **starting from day one**, and the time frame that would be necessary to transition from SIS should DHS change the assessment protocol that would be used.

*Ascend I*, slip op. at 10. Thus, as Ascend notes, references to SIS "were not made in passing." (Ascend's Reply Br. at 2.) Instead those references "relate to the **responsibility** of the selected contractor, [such as] SIS training, SIS credentialing, SIS testing, SIS evaluation, and SIS administration." (*Id.* (emphasis in original).)

Given the foregoing, we conclude that the only reasonable interpretation of the RFQ is that the selected contractor had to have the ability to administer SIS assessments from the onset of the contract. *See Omnicare, Inc. v. Dep't of Pub. Welfare*, 68 A.3d 20, 25 (Pa. Cmwlth. 2013) (concluding that protestant did not have knowledge of the facts giving rise to its protest based on the terms of the request for proposals (RFP) because the RFP was unclear); *cf. JPay, Inc. v. Dep't of Corr.*, 89 A.3d 756, 765 (Pa. Cmwlth. 2014) (holding that there were no ambiguities in the RFP, and the basis for the protest was evident to the protestant at the time the RFP was issued).[5] Thus, contrary to the Designee's conclusion, Ascend was not challenging the terms of the RFQ because the RFQ plainly required the selected contractor to be able to administer SIS assessments from the onset of the contract. Rather, Ascend was challenging Department's selection of KEPRO because, Ascend claims, KEPRO does not have the ability to administer SIS assessments from the

---

[5] In another section of Department's brief, arguing against Ascend's request for an evidentiary hearing, Department states that "[i]t is unreasonable to assume that every use of 'shall' or 'must' [in an RFQ] amounts to a mandatory and unwaivable requirement." (Department's Br. at 24 n.2.) Although it is true that "a requirement phrased in the imperative does not necessarily make the requirement mandatory," *JPay Inc.,* 89 A.3d at 767, here, our decision is based not only on the imperative language used in the RFQ but also the number of references to the SIS in the RFQ and the context in which those references were made.

13

onset of the contract. In other words, under the terms of the RFQ, Ascend alleges that KEPRO is not a responsible contractor.[6] Ascend did not know that Department had selected KEPRO, or even that KEPRO had submitted a bid, until June 26, 2017. Therefore, Ascend's protest submitted four days later was timely.

Since Ascend's protest is timely, we will remand this matter to DHS for a reexamination of the merits of Ascend's protest. As discussed, the RFQ provides that the selected contractor must have the capability to administer SIS assessments. However, the Designee did not consider KEPRO's capability to administer SIS assessments as required under the RFQ. Thus, the Designee must reexamine the merits of Ascend's protest.

## B. Disclosure of Documents

Ascend argues that Department should have disclosed to it those documents "submitted to the Commonwealth by KEPRO related to any past, current, or prospective contract with AAIDD, any past, current or prospective AAIDD training or competence testing, and any results from any quality monitoring from any SIS assessments supposedly administered by KEPRO." (R.R. at 5a.) This is so because,

---

[6] Department argues that the only two requirements of the RFQ were that the quote be timely received and that it be properly signed by the contractor. However, the RFQ itself, as does the Procurement Code, requires that the selected contractor be "responsible." (R.R. at 33a.) A "[r]esponsible bidder" is one "that has submitted a responsive bid and that possesses the capability to fully perform the contract requirements in all respects and the integrity and reliability to assure good faith performance." Section 103 of the Procurement Code, 62 Pa. C.S. § 103. A "responsive bid" is one "which conforms in all material respects to the requirements and criteria in the [request for proposals]." *Id.* We note that in *JPay*, we held that the "only two mandatory requirements" in the RFP there were "the timeliness of the receipt of the proposal and signature of the offeror on the proposal – and that [the Office of Administration] could waive any other non-conformity, allow the offeror to cure or consider the non-conformity in the scoring." 89 A.3d at 766-67. In *JPay*, however, unlike here, the protestant's protest did not rise to the level of challenging a requirement of the RFP, the non-fulfilment of which would have rendered the bid non-responsive.

Ascend claims, Department clearly relied on those documents to conclude that KEPRO did not misrepresent its experience in the proposal and that KEPRO is a responsible contractor. ODP, Ascend notes, claimed that these documents were confidential, but the Designee concluded that these documents were not needed to render a determination. Ascend claims that ODP had to have reviewed KEPRO's submissions to determine if there were any misrepresentations.

Department argues that Ascend's request for documents was properly denied because Department did not rely on those documents in reaching the Final Determination.

We begin with the understanding that "[t]he Procurement Code does not provide protestants a right to production of documents or other discovery." *UnitedHealthcare of Pa., Inc. v. Dep't of Human Servs.*, 172 A.3d 98, 105 (Pa. Cmwlth. 2017). Section 1711.1(e) of the Procurement Code,[7] while it provides a protestant with the right "to review and address documents on which the agency designee bases his ruling on the protest, that right is limited to documents on which the agency designee actually relies." *Id.* (internal citations omitted).

Here, as Department points out, the Designee did not need to rely on any additional documentation in order to reach the Final Determination on the basis that

---

[7] Section 1711.1(e) of the Procurement Code provides as follows:

> The head of the purchasing agency or his designee shall review the protest and any response or reply and may request and review such additional documents or information he deems necessary to render a decision and may, at his sole discretion, conduct a hearing. The head of the purchasing agency or his designee shall provide to the protestant and the contracting officer a reasonable opportunity to review and address any additional documents or information deemed necessary by the head of the purchasing agency or his designee to render a decision.

62 Pa. C.S. § 1711.1(e).

Ascend's protest was untimely and lacking merit. However, the Designee's determination was based on a misreading of the RFQ. Since Ascend's protest was timely, and this matter must be remanded to Department for a reexamination of the merits of Ascend's protest, based on a proper reading of the RFQ, Department's Designee may need to rely on other documents besides those that the parties submitted, such as KEPRO's bid, in order to resolve the merits of Ascend's protest. If so, under Section 1711.1(e), Ascend would be entitled to "review and address" these documents. 62 Pa. C.S. § 1711.1(e).

### C. Evidentiary Hearing

Ascend claims that the Designee abused his discretion in denying its request for an evidentiary hearing because there were disputed issues of material fact relative to KEPRO's misrepresentations about its SIS experience and ability to conduct SIS assessments. Ascend's claims were not speculative but based on a prior proposal KEPRO submitted to the State of Tennessee and information Ascend had received from two representatives of AAIDD who, had there been an evidentiary hearing, could have been called to testify that KEPRO had never administered a valid SIS. If the Court does not reverse the Determination and award to KEPRO, the Court should remand to Department for an evidentiary hearing.

Department counters that the Designee did not abuse his discretion in denying Ascend an evidentiary hearing because there are no disputed facts here. The Designee concluded that the record before him contained all the information he needed to issue a determination. Department asserts that the basis for Ascend's protest, that KEPRO may have misrepresented its SIS experience, was supported by only conjecture. In any event, Department reiterates, "the RFQ did not require a

level of SIS experience as a prerequisite to selection." (Department's Br. at 24.) Moreover, Department argues, KEPRO met the requirements of the RFQ.

Pursuant to Section 1711.1(e) of the Procurement Code, the head of the purchasing agency or, as here, his designee may conduct a hearing on a bid protest "at his sole discretion." 62 Pa. C.S. § 1711.1(e). Only if the designee has exercised his discretion with bad faith, fraud, capricious action or abuse of power will we reverse the refusal to hold a hearing. *Durkee Lumber Co., Inc. v. Dep't of Conservation and Nat. Res.*, 903 A.2d 593, 597 (Pa. Cmwlth. 2006). "If . . . there are no disputed material facts necessary to make his determination, then necessarily he has not abused his discretion" in refusing to hold a hearing. *Id.*

Since the matter is being remanded, it is for the Designee to determine in the first instance, based on a proper reading of the RFQ, whether a hearing is warranted because there are disputed issues of material fact as to KEPRO's ability to administer SIS assessments. Whether a hearing is warranted may require the Designee, in light of Ascend's offer of proof, to examine other documents besides the documents the parties submitted in the filing, response and reply of the protest, including KEPRO's bid. 62 Pa. C.S. § 1711.1(e) ("The head of the purchasing agency or his designee shall review the protest and any response or reply and may request and review such additional documents or information he deems **necessary** to render a decision.") (emphasis added). We note, however, that it would have been better practice for Ascend to have laid bare its proof by, for example, submitting with its protest the proposal KEPRO submitted to the State of Tennessee, rather than alleging its existence, and affidavits from the two representatives of AAIDD, rather than recounting conversations Ascend had with them. *See UnitedHealthcare of Pa., Inc.*,

17

172 A.3d at 105-06 (recounting the limited rights of a protestant to the production of documents and a hearing).

**D. Stay**

Department has filed an application to lift the stay this Court granted staying Department and KEPRO from executing a contract or Department from issuing a purchase order under the RFQ pending resolution of the Petition. Department argues that when this Court issued the stay, it did so at least partially on the basis that the parties had agreed to forego oral argument and submit the matter on briefs. Ascend, however, Department notes, subsequently requested oral argument, which this Court granted by order dated December 21, 2017. Department argues it will take several months for this Court to render a determination. Meanwhile, the stay has, and will continue to, substantially impede Department's ability to provide essential program services. If the stay is not lifted, Department argues, it will have to further extend its contract with Ascend, which has already been extended once, rather than obtaining services from KEPRO, the best value contractor. Department asserts that KEPRO and it are ready to finalize and execute a purchase order if permitted to do so.

Ascend opposes Department's application, arguing that it would suffer irreparable harm were the stay lifted. Instead, Ascend argues, the status quo should be maintained.

Since the matter is being remanded to the Designee for a reexamination of the merits of Ascend's protest, the procedural posture of this matter will be relegated to that of Ascend's initial protest. When "a protest is filed timely . . . and until the time has elapsed for the protestant to file an appeal with" this Court, the automatic stay

18

of Section 1711.1(k) of the Procurement Code takes effect. 62 Pa. C.S. § 1711.1(k). Therefore, while we lift the stay this Court granted by Order dated November 1, 2017, the effect of our resolution of Ascend's appeal is to stay Department's award of the contract under the RFQ to KEPRO pursuant to Section 1711.1(k).

_____
**RENÉE COHN JUBELIRER,** Judge

Judge Fizzano Cannon did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ascend Management Innovations LLC, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1273 C.D. 2017 |
| | : | |
| Department of Human Services, | : | |
| Respondent | : | |

# **O R D E R**

**NOW**, March 23, 2018, the Final Determination of the Pennsylvania Department of Human Services (Department), dated August 29, 2017, is **REVERSED**, and the matter is remanded to Department's Designee for a reexamination of the merits of Bid Protest No. 2017-BP-13 of Ascend Management Innovations LLC. The Application of Department to lift the Stay granted by this Court in this matter by Order dated November 1, 2017, is **GRANTED**.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge