CARDIAC SCIENCE, INC., Petitioner,

v.

DEPARTMENT OF GENERAL SERVICES, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2002.

Decided Oct. 21, 2002.

Gerald Gornish, Philadelphia, for petitioner.

Peter M. Good, Harrisburg, for respondent.

John P. Lavelle, Jr., Philadelphia, for intervenor, Medtronic Physio–Control Corp.

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

Cardiac Science, Inc. petitions for review of the February 11, 2002 decision and order of the Department of General Services (DGS) denying Cardiac Science's bid protest challenging DGS's award of Contract No. 6520–02 (Contract) for an estimated 1,128 automatic external defibrillators (AEDs) to Medtronic Physio–Control Corporation (Medtronic). For the reasons that follow, we affirm.

DGS found the following facts. On August 23, 2001, DGS issued an invitation for bid/bid proposal (IFB) for the Contract. Cardiac Science submitted a bid with a unit price of $1,387.00. The bids were opened on November 14, 2001.

The envelope that contained Cardiac Science's bid included a November 7, 2001 letter which stated that the bid included Quote No. 5329. Included in Quote No. 5329 were the terms: "Conditions: 15

Days FOB Factory" and "Estimated Shipping Price $0.00." R.R. 49a.

The cover sheet of DGS's IFB indicated that the General Conditions and Instructions to Bidders (General Conditions) were part of the IFB and would be considered in evaluating the bids for the Contract. Paragraph 18 of the General Conditions provides in pertinent part:

> *DELIVERY:* All products shall be delivered F.O.B. Destination with any delivery duty paid (DDP).[1] The contractor agrees to bear the risk of loss, injury or destruction of products ordered which occur prior to receipt by the Commonwealth. Such loss, injury or destruction shall not release contractor from any contractual obligations.

R.R. 27a (footnote added).

After the bids were opened, Cheryl Wenger, a buyer for DGS, noticed the *FOB Factory* condition in Quote No. 5329 and called Cardiac Science. Carol Hofmaister of Cardiac Science told Wenger that the *FOB Factory* condition in Quote No. 5329 was not intended to be part of the bid and that its inclusion was an oversight. In order to eliminate any confusion or ambiguity, Cardiac Science faxed Wenger a new backdated quote form with the *FOB Factory* condition removed and *FOB Destination* inserted.

However, DGS rejected Cardiac Science's bid as not responsive to the IFB requirements. On November 27, 2001, DGS awarded the Contract to Medtronic as the lowest responsible bidder at a unit price of $1,445.00.

On December 3, 2001, Cardiac Science filed a bid protest under Section 1711(a) of the Commonwealth Procurement Code (Code), 62 Pa.C.S. 1711(a).[2] On December 19, 2001, Sharon P. Minnich, DGS's Deputy Secretary for Procurement, replied with a letter containing a statement of facts and DGS's legal basis for rejecting Cardiac Science's bid. In that letter, the Deputy Secretary advised Cardiac Science that if it disagreed with the facts as stated, it had three business days to request a hearing before a Departmental hearing officer. The letter further advised Cardiac Science that if it did not request a hearing, the bid protest would be decided upon the facts stated in said letter and in Cardiac Science's December 3, 2001 letter.

By letter dated January 2, 2002, Cardiac Science replied that it disagreed with some of the facts in the Deputy Secretary's December 19, 2001 letter. However, Cardiac Science did not request a hearing. On January 9, 2002, Cardiac Science submitted its legal argument to DGS. In addition, by letter dated January 15, 2002, Medtronic submitted a memorandum of law in support of its position that DGS properly rejected Cardiac Science's bid as not responsive.

On February 11, 2002, the Deputy Secretary issued her decision and order denying Cardiac Science's bid protest. In her decision, the Deputy Secretary noted that Quote No. 5329 was part of Cardiac Science's sealed bid package and, therefore, could not be disregarded as irrelevant or

---

1. Pursuant to Section 2319(a) of the Uniform Commercial Code, 13 Pa.C.S. § 2319(a), the term FOB (free on board) is a delivery term indicating: (1) when the term is *FOB place of shipment,* the seller only bears the expense and risk of transporting the goods until they are placed in possession of the carrier; (2) when the term is *FOB place of destination,* the seller bears the expense and risk of transporting them to the named place of destination.

2. Section 1711(a) provides in pertinent part: "An actual or prospective bidder, offeror or contractor who is aggrieved in connection with the solicitation or award of a contract may protest to the head of the purchasing agency in writing."

superfluous. Furthermore, the *FOB Factory* condition in Quote No. 5329 was clearly inconsistent with the *FOB Destination* condition in Paragraph 18 of the General Conditions.

In addition, the Deputy Secretary concluded that the *FOB Factory* condition was a material nonconformance as opposed to a waivable technical defect. As a result, such a defect could not be cured by clarification or waiver. Consequently, the Deputy Secretary determined that Cardiac Science's bid protest lacked merit and she refused to stay the award of the Contract to Medtronic. Cardiac Science appealed and Medtronic intervened.[3]

Before this Court, Cardiac Science contends that DGS's decision to reject its bid as nonresponsive was not justified by the presence of Quote No. 5329, which contained an alleged *ambiguity* concerning delivery terms. Initially, Cardiac Science contends that Quote No. 5329 should have been disregarded because it was not intended to be considered as part of the bid package and that otherwise, its bid was complete. Cardiac Science further contends that Quote No. 5329 did not specify that it constituted an exception to the terms and conditions required by DGS.

Cardiac Science also claims that when DGS opened the bids and Wenger called Cardiac Science to inquire about its intent, Cardiac Science's representative immediately and unequivocally clarified to DGS that the quote form was a mistake and that DGS need only consider Cardiac Science's bid on the completed and signed bid response forms. As such, Cardiac Science asserts that the *FOB Factory* condition in Quote No. 5329 was in fact *nonmaterial*

and that, therefore, DGS should have considered the term to be a waivable technical defect. As such, Cardiac Science claims that DGS erred in determining that its bid was nonresponsive.

To support its position, Cardiac Science primarily relies on *Gaeta v. Ridley Sch. Dist.*, 567 Pa. 500, 788 A.2d 363 (2002), where the Supreme Court determined that a bid requirement for an "A" bond quality rating did not by itself indicate that an "A" bond quality rating was a *material,* nonwaivable term of the bid. In *Gaeta,* the bidder submitted a bid with a "B" bond quality rating. The Court noted that there was no statute or ordinance requiring an "A" rather than a "B" bond quality rating and that the difference between the two ratings had no effect upon the assurance to the school district that the contract would be performed. Thus, the Court determined that the bidder's noncompliance with the bond quality rating specification was a *non-material* irregularity. As a result, the bidder was allowed to cure the "defect" by resubmitting an "A" quality bond after the bids were opened.

Cardiac Science asserts that the rationale in *Gaeta* should be followed in this case insomuch as: (1) the *FOB Factory* condition constituted a waivable, technical defect that could be cured because its inclusion was an oversight that neither deprived DGS of its assurance that the contract would be performed nor gave Cardiac Science an unfair advantage that would adversely affect the competitive bidding process; and (2) upon being contacted by DGS, Cardiac Science immediately clarified its intent to follow the IFB

---

**3.** On review, we are limited to determining whether the agency's necessary findings of fact are supported by substantial evidence, whether the agency committed an error of law or whether Cardiac Science's constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Int'l Union of Bricklayers & Allied Craftworkers, Local 5, v. Prevailing Wage Appeals Bd.,* 778 A.2d 1264 (Pa.Cmwlth.2001).

conditions by striking the *FOB Factory* condition.

Section 512(g) of the Code, provides in pertinent part: "**Award.**—The contract shall be awarded within 60 days of the bid opening by written notice to the *lowest responsible* and *responsive* bidder whose bid meets the requirements and criteria set forth in the invitation for bids or all bids shall be rejected. . . ." 62 Pa.C.S. § 512(g) (emphasis added). Section 501 of the Code defines a responsive bidder as "[a] person who has submitted a bid which conforms *in all material respects* to the invitation for bids." 62 Pa.C.S. § 501 (emphasis added).

 "Variances from instructions and specifications in public works bidding are to be discouraged and, at a minimum, implicate the government's discretionary authority to reject a non-compliant bid." *Gaeta,* 567 Pa. at 511–512, 788 A.2d at 369. "Courts will not review the action of governmental bodies or administrative tribunals involving acts of discretion in the absence of bad faith, fraud, capricious action, or abuse of power." *Kimmel v. Lower Paxton Tp.,* 159 Pa.Cmwlth. 475, 633 A.2d 1271, 1274 (1993). In making a determination as to the lowest responsible bidder, each bid must be carefully examined to ascertain its responsiveness to the requirements of the IFB. *Id.*

 We will first address Cardiac Science's claim that Quote No. 5329 was not in fact a part of the bid. In Finding of Fact No. 4 of her February 11, 2002 decision, the Deputy Secretary stated: "The envelope that contained the Cardiac Science bid included a letter dated November 7, 2001 which stated that the Cardiac Science bid included Quote No. 5329." DGS Decision at 1; R.R. 127a. Cardiac Science's November 7, 2001 letter to DGS provides in pertinent part: "Thank you for your interest in the FirstSave Automated External Defibrillator (AED) and the accessories from Cardiac Science. *Enclosed is our proposal, which includes the following:*

Invitation for Bid/Bid Proposal, including Flyers 1, 2 & 3

*Quote No. 5329*

Copy of Merger Agreement

Corporate Resolution

Return Goods Policy

5 Year Limited Warranty

Product Information.

R.R. 31a (emphasis added).

The November 7, 2001 letter was signed by Valerie Joseph and Eric Swiggum, who were identified in the letter as "Territory Managers" for Cardiac Science. *Id.* Both the letter and Quote No. 5329 were submitted in a sealed envelope marked "Bid." "Sealed bid or proposal" is defined by Section 501 of the Code as "[a] bid or proposal whose contents is [sic] not disclosed until the bid opening time or the proposal receipt date. Bids and proposals are typically submitted in sealed envelopes to meet this requirement. . . ." 62 Pa.C.S. § 501. In view of the foregoing, this Court believes that DGS did not err or abuse its discretion in determining that Quote No. 5329 was part of Cardiac Science's bid rather than a superfluous form.

 Next, Cardiac Science maintains that the *FOB Factory* condition constituted a nonmaterial waivable defect and that no additional information was necessary to complete its bid. Cardiac Science further maintains that the corrected quote form it faxed to DGS after being contacted by Wenger was not to complete its bid, but was instead a permissible clarification in response to Wenger's inquiry. Therefore, Cardiac Science contends that DGS abused its discretion by failing to permit the clarification.

This Court disagrees. The *FOB Factory* condition is directly contrary to the *FOB Destination* requirement in Paragraph 18 of the General Conditions. As a result, we do not believe that the *FOB Factory* term was a mere oversight as asserted by Cardiac Science.[4] Paragraph 1 of the General Conditions provides in relevant part: "If a bid is submitted with conditions or exceptions or *not in conformance with the terms and conditions in this invitation for bid, it **shall** be rejected.*" R.R. 26a (emphasis added). Before the corrected and backdated quote form was faxed to DGS after the bids were opened, Cardiac Science's bid did not indicate that its delivery terms were in fact *FOB Destination* rather than *FOB Factory.*

In short, by including the *FOB Factory* condition in its bid, Cardiac Science failed to follow the delivery specifications in Paragraph 18 of the General Conditions. Pursuant to the *FOB Factory* condition, the risk of loss, injury or destruction during shipping would be borne by the Commonwealth rather than the contractor. As a result, Cardiac Science's bid failed to meet the requirements established by DGS for the Contract and was, therefore, nonresponsive to the IFB.

 As the Supreme Court recognized in *Gaeta*, a bid irregularity may only be clarified or disregarded as a waivable defect if the effect of a waiver of that term:

(1) would not deprive the bid solicitor of an adequate assurance that the contract would be performed according to its specified requirements and (2) would not advantage the bidder over the other bidders. With regard to the first prong, if the *FOB Factory* condition had been waived, there would have been nothing in Cardiac Science's bid to adequately assure DGS that Cardiac Science would meet the *FOB Destination* requirement of the Contract.

With regard to the second prong, we recognize that in light of *Gaeta*, the proper inquiry for determining if the bid defect would have given Cardiac Science a competitive advantage is whether the contract, *with the defect included,* would have afforded Cardiac Science an advantage over its competitors. As discussed above, inclusion of the *FOB Factory* condition clearly shifted the risk of transporting the AEDs from Cardiac Science to the Commonwealth, thereby giving Cardiac Science an unfair advantage over its competitors.

 Hence, we reject Cardiac Science's contention that DGS misapplied or misinterpreted *Gaeta*, which requires that an initial determination as to whether the condition in question is a *material* nonconformance or a *non-material,* waivable, technical defect. Where, as here, the condition is a *material* nonconformance, it cannot be clarified or disregarded as a waivable defect.[5] *Gaeta.*

---

4. Both DGS and Intervenor Medtronic point out that the inclusion of the term "Estimated Shipping Price: $0.00" in Quote No. 5329 further indicated that Cardiac Science did not intend to be responsible for shipping expenses. However, in her decision, the Deputy Secretary stated: "While it is true that Quote No. 5329 contained the estimated shipping price of '$0.00,' the *risk* of shipping the AEDs from [Cardiac Science's] factory in Minnesota to the hundreds of locations in Pennsylvania would be borne by the Commonwealth." DGS's Decision at 4; R.R. 130a (emphasis

added). Hence, even if Cardiac Science intended the term to indicate that the Commonwealth would not have to pay for shipping, the Commonwealth would still have to cover the expense of insurance for transportation of the AEDs from the factory in Minnesota to their destinations throughout Pennsylvania.

5. Having determined that under the *Gaeta* rationale, the *FOB Factory* condition in Quote No. 5329 could not be clarified or waived, we need not address Cardiac Science's argument that DGS failed to comply with its own IFB,

■ Cardiac Science further contends that DGS's denial of its bid protest without a hearing by the same agency official who rejected its bid violated its due process rights. Specifically, Cardiac Science claims that Deputy Secretary Minnich acted in virtually every role in this matter from rejecting the bid, laying down the protest procedures and then adjudicating the protest. In addition, Cardiac Science argues that it was further denied its due process rights by DGS's policy of denying the bid protestor a hearing unless it specified disputed facts which needed resolution.

In *Direnzo Coal Co. v. Dep't of Gen. Servs., Bureau of Purchases*, 779 A.2d 614, 618 (Pa.Cmwlth.2001), this Court determined that DGS, an administrative agency, cannot issue a valid adjudication against a bidder who has filed a protest under Section 1711(a) of the Code unless the bidder has been "afforded reasonable notice of a hearing and an opportunity to be heard." By letter dated December 19, 1999, Deputy Secretary Minnich informed Cardiac Science that she rejected its bid protest. In that letter, the Deputy Secretary set forth the facts she relied on in making her decision and advised Cardiac Science as follows:

> If you disagree with the facts that formed the basis for the rejection of the bid ... you may request an administrative hearing before a Departmental hearing officer. If you decide to request a hearing, you must notify this office in writing within three (3) business days after receipt of this letter, stating the facts in dispute or to be presented in relation to the protest....
>
> ....
>
> If you do not request a hearing, the protest will be decided based upon the

which provides for clarifications and waiver

facts as stated above and in the December 3, 2001 letter from Cardiac Science, Inc. Any timely written documentation which you submit will be considered before a final decision on the protest is rendered.

R.R. 77a.

Although Cardiac Science responded by letter dated January 2, 2002 that it disagreed with some of the facts in the Deputy's Secretary's letter, Cardiac Science did not request a hearing. Rather, on January 9, 2002, Cardiac Science submitted its legal argument to DGS.

Clearly, as stated in the letter, Cardiac Science was advised that if it disagreed with the facts, it could request a hearing. The letter further advised Cardiac Science that if it did not request a hearing, the case would be decided on the facts as stated by DGS. Inasmuch as Cardiac Science never requested a hearing, it cannot argue before this Court that DGS failed to comply with the requirement that it afford Cardiac Science reasonable notice of a hearing and an opportunity to be heard. Consequently, we reject Cardiac Science's contention that DGS violated its due process rights by denying it an evidentiary hearing.

■ We now turn to Cardiac Science's claim that it was denied due process because Deputy Secretary Minnich served both in a prosecutorial and adjudicatory role. In support, Cardiac Science cites *Lyness v. State Bd. of Med.*, 529 Pa. 535, 605 A.2d 1204 (1992), where the Supreme Court determined that the State Board of Medicine violated a physician's due process rights by the commingling of prosecutorial and adjudicatory functions.

In *Lyness*, the Court reviewed a disciplinary proceeding against a licensed physician by the State Board of Medicine,

of technical defects.

which, during the same administrative proceeding, wore both the "hat of the prosecutor" and later, the "robe of the judge." The Court determined that a violation of due process occurred where the same group of individuals who were involved in making the decision to prosecute also were *significantly involved* in the adjudicatory phase of the proceedings. *See Id.* at 546–547, 605 A.2d at 1210.

In the case *sub judice*, however, Deputy Secretary Minnich was not the person who rejected Cardiac Science's bid as nonresponsive. Rather, the bid was rejected by DGS's Bureau of Purchases. Joseph W. Nugent is the Director of the Bureau of Purchases and the "contracting officer" responsible for determining whether bids are responsive. Section 103 of the Code defines "contracting officer" as "[a] person authorized to enter into and administer contracts and *make written determinations with respect to contracts*." 62 Pa. C.S. § 103 (emphasis added). As a result, Deputy Secretary Minnich was not the person who rejected Cardiac Science's bid.

Furthermore, once Cardiac Science filed its bid protest, Section 1711(b) of the Code provides that the Deputy Secretary, as "[t]he head of the purchasing agency shall have the authority to settle and resolve a protest of an aggrieved bidder, offeror or contractor, actual or prospective, concerning the solicitation or award of a contract." 62 Pa.C.S. § 1711(b). *Contrast* Section 1712(b) of the Code, 62 Pa.C.S. § 1712(b), which authorizes the *contracting officer* to settle and resolve contractual issues once a contract has been awarded, such as "breach of contract, mistake, misrepresentation or other cause for contract modification or recission."

Pursuant to Section 1711(b) of the Code, it was Deputy Secretary Minnich's responsibility to adjudicate Cardiac Science's bid protest. However, Director Nugent of the Bureau of Purchases was the individual responsible for reviewing Cardiac Science's bid and rejecting it as nonresponsive. Hence, Deputy Secretary Minnich did not perform a prosecutorial function in regard to Cardiac Science's bid. Although both Minnich and Nugent are members of the same administrative agency, this is not enough to raise the "red flag of procedural due process" where, as here, sufficient "walls of division" have been constructed to eliminate the threat or appearance of bias. *See Lyness,* 529 Pa. at 546, 605 A.2d at 1209.

In view of the foregoing, we affirm.

### ORDER

AND NOW, this 21st day of October, 2002, the February 11, 2002 order of the Department of General Services is hereby AFFIRMED.