IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tactical Public Safety, LLC,      :
                Petitioner      :
         :
      v.           :   No. 1090 C.D. 2022
         :
Pennsylvania Department of      :
General Services,      :
             Respondent    :   Submitted: May 8, 2023

BEFORE:    HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION BY JUDGE CEISLER       FILED: June 5, 2023

Tactical Public Safety, LLC (TPS) petitions for review of the September 26, 2022 final decision of the Pennsylvania Department of General Services (DGS), which denied TPS's bid protest on the grounds that the protest was untimely and lacked merit. We affirm.

## Background

For several years, TPS had been an approved vendor in the Commonwealth's cooperative purchasing program, commonly known as COSTARS, for the sale of two-way radio equipment and services. Pet. for Rev. ¶ 4. TPS's most recent COSTARS contract for two-way radio equipment and services was set to expire at the end of 2022. *Id.* ¶ 5.

Due to the impending expiration of TPS's COSTARS contract, on June 20, 2022, DGS issued Invitation for Bid Number 6100055625 (IFB) seeking bids for two-way radio equipment and services from January 1, 2023, through December 31, 2023. *Id.* ¶ 6; Reproduced Record (R.R.) at 41a. The deadline for the submission of all bids was 1:00 p.m. on July 19, 2022 (Bid Deadline). Pet. for Rev. ¶ 7. The

IFB provided that all "[b]ids must be submitted electronically" via the Pennsylvania Supplier Portal website (Portal) on or before the specified due date and that "[a]ny bid submitted to the Issuing Office in hardcopy format will be rejected." R.R. at 42a; *see id.* at 56a.[1] The IFB also provided that to be eligible for selection, a bid must be both timely received and properly signed by the bidder. *Id.* at 65a. In the IFB, DGS "reserve[d] the right to reject any and all [b]ids, to waive technical defects or any informality in [b]ids, and to accept or reject any part of any [b]id if the best interests of the Commonwealth are thereby served." *Id.* at 62a.

Between 8:30 a.m. and 12:43 p.m. on July 19, 2022, TPS logged into, or attempted to log into, the Portal 11 times. Pet. for Rev. ¶ 14; *see* R.R. at 7a-16a. TPS uploaded its bid documents to the Portal at approximately 11:30 a.m., 90 minutes before the Bid Deadline. Pet. for Rev. ¶ 8.

However, to fully complete a bid submission, the Portal also required TPS to answer two bid-related questions via digital drop-down boxes. *Id.* ¶ 9; *see* R.R. at 18a, 20a. After uploading its bid documents, TPS discovered that one of the required questions did not appear on TPS's computer screen. TPS attempted to resolve the issue by contacting the Portal's help desk by phone and by email. At 11:51 a.m., TPS called and spoke with a help desk associate, Randy Miller, but Mr. Miller was unable to resolve TPS's issue.

With the Bid Deadline quickly approaching, TPS's representative sent an email to the IFB's Issuing Officer, Raeden Hosler, at 12:03 p.m. on July 19, 2022, in which he stated:

---

[1] The IFB actually set the Bid Deadline as 12:00 p.m. on July 19, 2022, not 1:00 p.m. *See* R.R. at 41a. However, other record documents, including screenshots of the Portal on the day of the Bid Deadline, indicate that the Bid Deadline was 1:00 p.m., *see id.* at 5a, 23a, and 26a, and the parties do not dispute that the Bid Deadline was 1:00 p.m. on July 19, 2022, *see* TPS Br. at 6 n.1.

2

> I have uploaded all of my files to the . . . Portal but I am unable to submit because Question #1 is not showing. I have reached out to Randy Miller for support (copied).
>
> I don't want to miss the deadline because of a glitch.
>
> I have attached a screen[]shot of the problem.

R.R. at 25a. However, at the time TPS sent the email, Mr. Hosler was unavailable because he was on a scheduled lunch break. At 12:49 p.m., TPS sent another email to both Mr. Hosler and Mr. Miller, stating that TPS was responding "Yes" to both questions on the Portal and that TPS had uploaded all of its documents. Pet. for Rev. ¶ 24; R.R. at 28a.[2] TPS further stated: "Please consider this as a submitted bid response to [the] IFB." R.R. at 28a.

The IFB closed on July 19, 2022, at 1:00 p.m. DGS did not receive a completed electronic bid via the Portal from TPS. Multiple other bidders successfully submitted bids in response to the IFB through the Portal before the Bid Deadline. *See id.* at 36a; DGS Br. at 5. The IFB set the bid opening time as 1:01 p.m. on July 19, 2022 (Bid Opening Time). *See* R.R. at 5a, 23a, and 26a.

At 9:38 a.m. on July 20, 2022, Mr. Hosler replied to TPS's email from the prior day regarding its technical issue with the Portal, stating: "*Apparently the field was inadvertently hidden due to the mouse function you performed.* Below is the response I got from [the Integrated Enterprise System Department]. It appears that *until you go to the same screen and perform the same function, you will continue to have this problem until the field is unhidden*." *Id.* at 30a (emphasis added). Mr.

---

[2] In its July 19, 2022 email to Mr. Hosler and Mr. Miller, TPS stated that it replied "Yes" to both bid-related questions on the Portal, R.R. at 28a, even though only one question was visible on its computer screen during its attempted bid submission, *id.* at 26a.

Hosler also informed TPS: "I have been told there is nothing we can do about the [bid] submission at this point." *Id.*

On July 26, 2022, TPS submitted its protest to DGS, challenging DGS's refusal to consider its bid. TPS asserted that its "inability to respond to the first question [on the Portal] after uploading its bid documents . . . was due to nothing more than a programming quirk" and that "[t]he sole irregularity with TPS's bid is that TPS provided answers to the questions via email due to issues with the [Portal]." *Id.* at 2a. TPS argued that, as a result, any variance in its bid submission was "at most *di minimis* [sic] and should be waived by DGS." *Id.* It further argued that waiver of its bid defect would be "harmless to the other successful bidders," as it "would not deprive any other successful bidder of its award under the [IFB], but instead merely add to [DGS's] approved vendor list." *Id.* at 3a. Thus, TPS requested that "its bid . . . be considered responsive and that DGS award TPS a cooperative purchasing contract pursuant to the [IFB]." *Id.*

On August 3, 2022, DGS's Contracting Officer recommended to DGS's Deputy Secretary of Procurement (Deputy Secretary) that DGS deny TPS's protest. Based on her review of the record, the Contracting Officer determined:

> *Since TPS'[s] bid was never electronically submitted in* [*the Portal*]*, meaning that the full electronic process was not completed thereby allowing the electronic bid to be submitted and recorded in* [*the Portal*]*, TPS is a prospective bidder and not a bidder.* As a prospective bidder, TPS was obligated to submit a bid protest prior to the Bid Opening Time in order for such bid protest to be considered timely received. *TPS, as a prospective bidder, did not submit a bid protest prior to the Bid Opening Time. Because TPS is not a bidder, the bid protest is untimely and therefore should be disregarded.*
>
> . . . .

4

In addition to untimeliness, this bid protest should also be denied as clearly without merit.

Contrary to TPS'[s] . . . assertion, [DGS] *does* dispute that TPS submitted all the requisite bid documents and provided answers in the affirmative to both of the requisite questions prior to the Bid Opening Time. *All bid documents must be submitted through [the Portal], not merely uploaded, in order to be officially received. The documents are not officially received by [the Portal] or able to be reviewed by [DGS] until the bidder submits them.* Submission does not take place until all of the steps are completed in [the Portal], including the answering in the affirmative of the last two questions in [the Portal], which TPS was unable to do. The email to the Issuing Officer from TPS at 12:49 [p.m.] on July 19, 2022, stating that TPS'[s] answer to both of the remaining questions was "yes" is not sufficient. *TPS was the only vendor that [DGS] is aware of that had an issue submitting a bid in response to the IFB. [DGS] does not have access to any of the documents that TPS asserts were uploaded to [the Portal] on July 19, 2022.*

*Id.* at 36a (emphasis added). On August 12, 2022, TPS submitted a reply to the Contracting Officer's recommendation. Pet. for Rev. ¶ 32.

On September 26, 2022, the Deputy Secretary issued a final decision denying TPS's protest. With regard to timeliness, the Deputy Secretary determined:

It is important to understand the method by which bids are submitted electronically through the electronic submission system in response to a solicitation. Prospective bidders go into the . . . Portal in order to review the solicitation documents and requirements and to upload documents required to be submitted in response to the solicitation. Once the prospective bidder has uploaded all the documents and completed any required information in the . . . Portal, *the bid must actually be submitted electronically through the . . . Portal to [DGS's] electronic submission system, referred to as "SRM."* There is, within SRM, a submit button by which this electronic submission is accomplished. *Until such submission is effectuated and the bid due date and time have passed, the Issuing Officer does not have the ability to see or access anything uploaded by the prospective bidder until the prospective bidder actually submits the bid.* Any bids timely submitted

5

through SRM are available for review only after the bid close date and time.

This is important to note as TPS argues that it had submitted a bid in response to the IFB because it had uploaded documents in the . . . Portal. However, *TPS never actually submitted its bid response into the SRM system.* I further note that TPS, in its protest filings, states that it began logging into the . . . Portal at 8:13 a[.]m[.] on July 19, 2022, and then repeatedly kept trying to do so until 12:43 p[.]m[.] on that same day. *However, at no point prior to 11:59 a*[.]*m*[.] *did TPS reach out to* [*DGS*] *for assistance.* When TPS finally did reach out, no one was available at that time to assist since it was over scheduled lunch periods. *It is also noted that no other bidder encountered the difficulty that TPS did and therefore this was a not a system issue with either the . . . Portal or SRM.*

R.R. at 102a (emphasis added).

The Deputy Secretary also concluded that TPS's protest lacked merit, rejecting its assertion that DGS can waive the defect in its bid submission, as follows:

The timely submission of a bid is a critical component to the sealed competitive bid method of procurement, or an [IFB]. It has always been the requirement that if a bid is not submitted prior to the bid due date and time, it will not be considered. *This is not a di minimis* [sic] *variance to the IFB requirements but rather one of the fundamental and mandatory requirements of an IFB. TPS itself acknowledges the firm requirement of a timely submission in its email to Mr. . . . Hosler, the Issuing Officer for the IFB*[,] *at 12:03 p*[.]*m*[.] *on July 19,* [*2022,*] *stating*[,] *"I don't want to miss the deadline because of a glitch." While many things within a bid submission could be waived, mandatory requirements such as submission prior to the due date and time is not one of them.*

*Id.* at 103a (emphasis added). TPS now petitions this Court for review.[3]

---

[3] Section 1711.1(i) of the Commonwealth Procurement Code (Procurement Code), 62 Pa. C.S. § 1711.1(i), provides that in an appeal from a final determination of a purchasing agency, this Court "shall affirm the determination of the purchasing agency unless it finds from the record that **(Footnote continued on next page…)**

## Analysis

### 1. Merits of Protest

TPS asserts that DGS erred in concluding that its bid protest lacked merit. TPS argues that DGS should have waived its bid submission defect because TPS uploaded its bid documents to the Portal in a timely manner and because DGS has the discretion to waive a *de minimis* variance in the bid process. In support of its waiver argument, TPS points out that: it complied with the instructions in the IFB for requesting help with technical issues but received no response from DGS until after the Bid Deadline; it uploaded its bid documents to the Portal before the Bid Deadline; and it emailed its response to the two bid-related questions before the Bid Deadline. In response, DGS asserts that it had no discretion to waive the defect in TPS's bid submission because the electronic submission requirements were mandatory pursuant to the language of the IFB.

Section 512(e) of the Procurement Code, 62 Pa. C.S. § 512(e), provides that all bid evaluation criteria for a Commonwealth contract solicitation must appear in the invitation for bids. For a bid to be valid, the bid must comply with the mandatory requirements set forth in the purchasing agency's invitation for bids. *Glasgow, Inc. v. Pa. Dep't of Transp.*, 851 A.2d 1014, 1017 (Pa. Cmwlth. 2004) (*en banc*). Our courts have held that where a term or condition in an invitation for bids is mandatory,

---

the determination is arbitrary and capricious, an abuse of discretion[,] or is contrary to law." Further,

> [t]he record of determination for review by th[is C]ourt shall consist of the solicitation or award; the contract, if any; the protest; any response or reply; any additional documents or information considered by the head of the purchasing agency or his designee; the hearing transcript and exhibits, if any; and the final determination.

*Id.* § 1711.1(h).

a bidder must strictly adhere to such requirement. *Dragani v. Borough of Ambler*, 37 A.3d 27, 31 (Pa. Cmwlth. 2012); *see Cardiac Sci., Inc. v. Dep't of Gen. Servs.*, 808 A.2d 1029, 1033 (Pa. Cmwlth. 2002) ("'Variances from instructions and specifications in public works bidding are to be discouraged and, at a minimum, implicate the government's discretionary authority to reject a non-compliant bid.'") (citation omitted).

As TPS correctly points out, there are some instances in which a purchasing agency has the discretion to waive a bid defect. Our Supreme Court has identified the following two criteria for determining whether a bid defect can be waived or cured:

> "[F]irst, [the purchasing agency must consider] whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary standard of competition."

*Gaeta v. Ridley Sch. Dist.*, 788 A.2d 363, 367-68 (Pa. 2002) (citation omitted). However, the purchasing agency may only waive a bid defect where the defect does not involve a mandatory requirement that the bid instructions treat as non-waivable. *Cardiac Sci.*, 808 A.2d at 1033. Hence, where the bid instructions indicate that a bid will be rejected if certain qualifications are not met, the purchasing agency lacks the discretion to waive those qualifications. *See id.* at 1034; *see also Glasgow*, 851 A.2d at 1017 ("*Where specifications set forth in a bidding document are mandatory, they must be strictly followed for the bid to be valid*, and a violation of those mandatory bidding instructions constitutes a legally disqualifying error for which a public agent may reject a bid.") (emphasis added).

8

In this case, the IFB provided that to be eligible for selection, a bid must be both timely received and properly signed by the bidder. R.R. at 65a. The IFB also explicitly stated: "Bidders *must* submit their bids *through the Commonwealth's electronic system* (SRM)." R.R. at 56a (emphasis added). Further, the IFB stated:

> *It is the responsibility of each bidder to ensure that its Bid is received through the electronic system* prior to the date and time set for the opening of bids ("Bid Opening Time"). *No Bid shall be considered if it arrives after the Bid Opening Time, regardless of [the] reason for the late arrival.*

*Id.* (emphasis added).

With regard to evaluating defects in the submission of bids, we are guided by this Court's decisions in *Center for Climate Strategies, Inc. v. Department of Environmental Protection*, 194 A.3d 742 (Pa. Cmwlth. 2018), and *Glasgow*, *supra*. In *Climate Strategies*, this Court upheld the Department of Environmental Protection's (DEP) rejection of a bid on the basis that Climate Strategies failed to submit its bid through the electronic supplier portal, as specified in the advertisement for solicitation. 194 A.2d at 745. Due to technical difficulties, Climate Strategies submitted the bid via email, rather than through the electronic portal. *Id.* at 743. Climate Strategies protested DEP's determination, arguing, *inter alia*, that its failure to properly submit the bid was the result of both inadequate technical support and the solicitation's lack of guidance on expected technical support wait times. *Id.* at 744.

In concluding that Climate Strategies' failure to submit its bid through the electronic portal was a non-waivable defect, this Court explained:

> [T]he Solicitation's original invitation for bids explicitly stated that the invitation for bids included all documents attached to the invitation or incorporated by reference, as well as later-added addenda. Therefore,

9

the information and requirements contained in the Advertisement and posted on the PA eMarketplace website form part of the Solicitation's requirements/bid evaluation criteria.

The Advertisement provided, in bold print:

**Responses to this bid will <u>only</u> be accepted electronically.**

On the very next line, also in bold print, the Advertisement further provided:

**You must go to <u>http://www.pasupplierportal.state.pa.us</u> to complete this bid.**

Accordingly, in addition to requiring electronic submission, the Solicitation specified the exact electronic submission method prospective contractors would need to employ to properly electronically submit their bids. *The use of the definite and unambiguous language "only" and "must" made the PA Supplier Portal use submission requirement mandatory and thus non-waivable. The Solicitation's mandate was clear and easily understood: to be considered for the contract, prospective contractors needed to timely submit their bids via the PA Supplier Portal.* [*Climate Strategies'*] *failure to comply with this unambiguous mandatory requirement rendered its bid non-responsive, regardless of the timely submission of its bid through a different electronic submission method.*

*Id.* at 745 (internal citations omitted) (bold in original; italics added). This Court further held that "[b]ids that fail to conform to *all mandatory requirements and criteria contained in an invitation for bids are non-responsive* to the invitation." *Id.* (emphasis added). Therefore, because Climate Strategies failed to comply with the mandate to submit its bid via the electronic portal, this Court affirmed the denial of its protest. *Id.*

Moreover, in *Glasgow*, the Pennsylvania Department of Transportation (DOT) solicited bids for a construction project. The bid instructions directed bidders

to submit certain information electronically via DOT's website and stated that the lowest bidder's failure to submit the information by the due date and time would result in the contract being awarded to the next lowest bidder. 851 A.2d at 1016 & n.1. Glasgow, the lowest bidder, entered the required information on DOT's website but failed to press the "submit" button. *Id.* at 1016. As a result, DOT rejected Glasgow's bid because the information was not timely submitted per the bid instructions. *Id.*

On appeal, Glasgow argued that DOT abused its discretion by failing to waive an "insubstantial and immaterial irregularity in the bidding process." *Id.* at 1017. An *en banc* panel of this Court, however, disagreed and affirmed the denial of Glasgow's protest. We specifically declined to apply the *Gaeta* test because we concluded that Glasgow's failure to electronically submit the required information was a non-waivable, material defect, holding: "While [DOT] could have provided otherwise, *it removed any discretion it had to waive the time to submit the information when it provided in the bid instructions that the bid would be rejected if the information was not provided within the time specified.*" *Id.* (emphasis added).[4]

Here, in the IFB, DGS reserved "the right to waive technical defects or any informality in [b]ids." R.R. at 62a. However, as in *Climate Strategies* and *Glasgow*, DGS removed any discretion to waive a defect relating to the *submission* of a bid by clearly stating in the IFB that: all bids "*must*" be submitted electronically through the Portal by the due date; it was the bidder's responsibility to ensure that its bid was received through the electronic Portal; and no bids would be considered if they arrived late, "regardless of [the] reason for the late arrival." R.R. at 56a (emphasis

---

[4] In so holding, the *Glasgow* Court observed: "What occurred here is no different than what occurs in normal, every[]day commercial transactions; until the submit button was clicked, Glasgow, as [DOT] found, was not bound by any of its representations." 851 A.2d at 1018-19.

11

added); *see id.* at 103a (concluding that the failure to timely submit a bid by the due date is "not a *di minimis* [sic] variance to the IFB requirements but rather one of the fundamental and mandatory requirements of an IFB"). Our case law instructs that while DGS is empowered to waive non-material bid defects, it cannot waive a mandatory requirement specified in the IFB. *See Glasgow*, 851 A.2d at 1017; *see also Kimmel v. Lower Paxton Twp.*, 633 A.2d 1271,1274-75 (Pa. Cmwlth. 1993) ("It is well settled that *the specifications set forth in a bidding document are mandatory and must be strictly followed* for the bid to be valid.") (emphasis added). Like the purchasing agency in *Climate Strategies*, DGS's use of unambiguous, mandatory language made the requirement of electronic submission via the Portal non-waivable. Therefore, we conclude that TPS's failure to electronically submit its bid through the Portal by the Bid Deadline, regardless of the reason, was a material, non-waivable defect. *See Cardiac Sci.*, 808 A.2d at 1034 ("Where, as here, the condition is *a material nonconformance, it cannot be clarified or disregarded as a waivable defect.*") (emphasis added).[5]

TPS further contends that DGS "should not be permitted to rely on its complicity in preventing TPS from submitting its bid as the basis for preventing TPS from protesting those same actions." Pet. for Rev. ¶ 43. TPS maintains that "the

---

[5] The cases on which TPS relies to support its waiver argument are inapposite here, as they involved defects in the contents of the bid documents themselves, not defects in the *submission* of the bids. *See, e.g.*, *KPMG LLP v. Dep't of Hum. Servs.*, 276 A.3d 308, 314-15 (Pa. Cmwlth. 2022) (holding that where the successful bidder met the two mandatory requirements in the RFP – that the bid be timely received and signed by the bidder – its failure to include certain required information *in the bid documents* was a waivable defect); *see also Language Line Servs., Inc. v. Dep't of Gen. Servs.*, 991 A.2d 383, 390 (Pa. Cmwlth. 2010) (holding that because the RFP stated that timely receipt and proper signature execution were the only two mandatory requirements and the successful bidder met those requirements, the bid was responsive, despite the omission of certain required information *in the bid documents*). With regard to a defect in bid submission, as occurred in this case, we conclude that *Climate Strategies* and *Glasgow* are controlling.

Portal's technical issues coupled with [DGS's] non-responsiveness prevented TPS from submitting its bid." *Id.* ¶ 42. We conclude that the record belies this claim.

Contrary to TPS's assertion, the record shows that the technical issue TPS experienced was *not* attributable to DGS, but to TPS. After consulting with DGS's Integrated Enterprise System Department, Mr. Hosler informed TPS: "Apparently the field was inadvertently hidden *due to the mouse function you performed*. . . . It appears that *until you go to the same screen and perform the same function, you will continue to have this problem until the field is unhidden*." R.R. at 30a (emphasis added). Importantly, DGS also determined, based on its review of the record, "that *no other bidder encountered the difficulty that TPS did* and therefore *this was a not a system issue with either the . . . Portal or SRM*." *Id.* at 102a (emphasis added); *see also id.* at 36a ("*TPS was the only vendor that* [*DGS*] *is aware of that had an issue submitting a bid* in response to the IFB.") (emphasis added).

In other words, it appears that there were no issues with the Portal itself on the day of the Bid Deadline. Rather, the technical issue TPS experienced was likely the result of user error, as TPS inadvertently caused the field containing one of the required questions to become hidden. When TPS finally requested assistance, approximately one hour before the Bid Deadline, there was insufficient time for the help desk to identify or diagnose TPS's problem. Furthermore, as the Deputy Secretary found:

> TPS, in its protest filings, states that it began logging into the . . . Portal at 8:13 a[.]m[.] on July 19, 2022, and then repeatedly kept trying to do so until 12:43 p[.]m[.] on that same day. However, at no point prior to 11:59 a[.]m[.] did TPS reach out to [DGS] for assistance. When TPS finally did reach out, no one was available at that time to assist since it was over scheduled lunch periods.

R.R. at 102a; *cf. Climate Strategies*, 194 A.3d at 744-45 (holding that Climate Strategies' failure to submit its bid via the electronic portal was a non-waivable defect, despite its claim that the defect was the result of the agency's inadequate technical support and the solicitation's lack of guidance on expected technical support wait times). Under these circumstances, we conclude that DGS properly determined that TPS's protest lacked merit.

## 2. Timeliness of Protest

TPS also asserts that DGS erred in concluding that its protest was untimely. TPS contends that, as a bidder, it filed its protest within seven days after TPS became aware of the facts giving rise to the protest, as required by Section 1711.1(b) of the Procurement Code, 62 Pa. C.S. § 1711.1(b).[6] According to TPS, DGS's assertion that TPS was only a prospective bidder and, thus, was required to submit its protest before the Bid Opening Time is unreasonable, since the Bid Opening Time was only one minute after the Bid Deadline. TPS argues that because it uploaded its bid documents and answered the requisite questions by email before the Bid Deadline,

---

[6] Section 1711.1(b) of the Procurement Code provides in relevant part:

> If the protestant is a *bidder or offeror* or a prospective contractor, the protest shall be filed with the head of the purchasing agency *within seven days after the aggrieved bidder or offeror or prospective contractor knew or should have known of the facts giving rise to the protest* except that in no event may a protest be filed later than seven days after the date the contract was awarded. If the protestant is a *prospective bidder or offeror*, a protest shall be filed with the head of the purchasing agency *prior to the bid opening time or the proposal receipt date. If a bidder or offeror, a prospective bidder or offeror or a prospective contractor fails to file a protest or files an untimely protest, the bidder or offeror, the prospective bidder or offeror or the prospective contractor shall be deemed to have waived its right to protest the solicitation or award of the contract in any forum.* Untimely filed protests shall be disregarded by the purchasing agency.

62 Pa. C.S. § 1711.1(b) (emphasis added).

14

it could not have known prior to the Bid Opening Time that DGS would reject its bid based on a technical defect.

To protest a bid solicitation issued by a Commonwealth agency, a person or entity must be either a "bidder" or a "prospective bidder." 62 Pa. C.S. § 1711.1(b). The Procurement Code defines "bidder" as "[a] person that *submits a bid* in response to an invitation for bids." *Id.* § 103 (emphasis added). "Prospective bidder," however, is not defined in the Procurement Code. This Court, in considering the time limitations for the filing of bid protests, has explained the distinction between the two types of bidders as follows:

> Section 1711.1 [of the Procurement Code] clearly refers throughout to bidders and offerors and prospective bidders and offerors as *separate categories*. In addressing the time limitation for filing a protest with respect to actual bidders and offerors and prospective bidders and offerors, *Section 1711.1(b) sets forth separate time limitations for each category*. As Stanton[-Negley] is a *prospective offeror* in this instance, the language of Section 1711.1(b)[,] which provides that *"[i]f the protestant is a prospective bidder or offeror, a protest shall be filed with the head of the purchasing agency prior to the bid opening time or the proposal receipt date,"* is applicable . . . .

*Stanton-Negley Drug Co. v. Dep't of Pub. Welfare*, 926 A.2d 554, 556 (Pa. Cmwlth. 2007) (emphasis added); *see generally MSG Grp., Inc. v. Dep't of Pub. Welfare*, 902 A.2d 613 (Pa. Cmwlth. 2006) (applying Section 1711.1(b)'s time limitation to an aggrieved prospective bidder). In other words, a bidder must file a protest within seven days of discovering the facts giving rise to the protest, whereas a *prospective bidder* must file a protest *before* the bid opening time. *See* 62 Pa. C.S. § 1711.1(b).

In response to TPS's claims, DGS asserts that TPS failed to submit a completed electronic bid in response to the IFB. Because TPS did not submit a completed electronic bid via the Portal, as required by the IFB, TPS cannot be

considered a bidder under the Procurement Code, but only a prospective bidder. Therefore, DGS contends that TPS was required to file its protest prior to the Bid Opening Time. We agree.

As discussed earlier, the IFB clearly stated that in order to be considered, all bids must be submitted electronically through the Portal before the Bid Deadline. R.R. at 56a. The Deputy Secretary explained the submission process as follows:

> [*T*]*he bid must actually be submitted electronically through the . . . Portal* to [DGS's] electronic submission system, referred to as "SRM." There is, within SRM, a submit button by which this electronic submission is accomplished. *Until such submission is effectuated and the bid due date and time have passed, the Issuing Officer does not have the ability to see or access anything uploaded by the prospective bidder until the prospective bidder actually submits the bid. Any bids timely submitted through SRM are available for review only after the bid close date and time*.

*Id.* at 102a (emphasis added); *see also id.* at 36a ("Submission does not take place until *all of the steps are completed in* [*the Portal*]*, including the answering in the affirmative of the last two questions in* [*the Portal*], which TPS was unable to do.") (emphasis added). In other words, *submission* of a bid is not completed, and any uploaded documents cannot be accessed by DGS, until the bidder completes the requisite steps in the Portal and clicks the "submit" button. After the submission deadline, no additional bids can be submitted or accepted.

We conclude, based on our review of the record, that TPS failed to submit a completed electronic bid through the Portal as required by the IFB. Under the plain language of the Procurement Code, because TPS did not submit a completed bid, TPS was not a bidder, as defined in Section 103 of the Procurement Code, but only a prospective bidder. *See* 62 Pa. C.S. § 103 (defining "bidder" as "[a] person that *submits a bid* in response to an invitation for bids") (emphasis added). Under Section

16

1711.1(b) of the Procurement Code, TPS, as a prospective bidder, was required to file its protest prior to the Bid Opening Time, i.e., by 1:01 p.m. on July 19, 2022. *See id.* § 1711.1(b). TPS did not file its protest until July 26, 2022. Therefore, we conclude that DGS properly determined that TPS's protest was untimely under Section 1711.1(b) of the Procurement Code.[7]

---

[7] TPS also contends that DGS's application of Section 1711.1(b) of the Procurement Code created an unreasonable result in this case, because the Bid Opening Time was only one minute after the Bid Deadline. TPS argues that it could not possibly have filed a protest within that timeframe, because it would have had to file its protest before it knew that DGS refused to consider its bid, which TPS did not learn until it received Mr. Hosler's email on July 20, 2022. TPS asserts:

> The unconscionability of DGS's position is further highlighted where DGS often publishes solicitations where the opening time is the exact same time as the bid due time. . . .
>
> . . . [I]f a bidder for these solicitations were to have issues with bid submission, there is no period of time to file a protest because the harm of being unable to submit a bid prior to the deadline would occur at the exact same moment that the bid opening does. This would be true regardless of the cause of the issue, including DGS's own active or passive interference, as seen in a situation like the instant matter where the [w]ebsite's issue and [DGS's] non-responsiveness to its own directed help desk procedure causes or contributes to the problems complained of by the protestor.

TPS Br. at 17-18.

While TPS raises a noteworthy question regarding the feasibility of applying the Procurement Code's time limitations to submission defects under certain unique circumstances, we cannot conclude, based on our review of the record and relevant law, that DGS acted arbitrarily, capriciously, or contrary to law in finding TPS's protest untimely under Section 1711.1(b). Moreover, contrary to TPS's assertion in its brief, the technical issue that prevented TPS from submitting its electronic bid was not attributable to "DGS's own active or passive interference" with the submission process. In any event, we need not address this question because, as explained in Section 1 of the Analysis section of this Opinion, we conclude that TPS's protest lacked merit.

17

## Conclusion

For the foregoing reasons, we conclude that DGS's denial of TPS's bid protest was not arbitrary, capricious, an abuse of discretion, or contrary to law. *See* 62 Pa. C.S. § 1711.1(i). Accordingly, we affirm DGS's September 26, 2022 final decision.

_____

ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tactical Public Safety, LLC,           :
                    Petitioner         :
                                       :
        v.                             :   No. 1090 C.D. 2022
                                       :
Pennsylvania Department of             :
General Services,                      :
                    Respondent         :

# **O R D E R**

AND NOW, this 5th day of June 2023, the final decision of the Pennsylvania Department of General Services, dated September 26, 2022, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge